**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 DEC 12  AM 9: 30

CLERK'S OFFICE
AT GREENBELT

BY  JAH  DEPUTY

| | | |
|---|---|---|
| **BARBARA ANN KELLY** | * | |
| **700 Gulf Shore Blvd. North** | * | |
| **Naples, FL 34102** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No.  CCB 17 CV3668** |
| **v.** | * | |
| | * | |
| **OFFIT KURMAN, P.A.** | * | |
| **Attn: Maurice Offit, Resident Agent** | * | |
| **8171 Maple Lawn Blvd.** | * | |
| **Suite 200** | * | |
| **Fulton, MD 20759** | * | |
| | * | |
| **Serve on:** | * | |
| **Offit Kurman, P.A.** | * | |
| **c/o: Maurice Offit, Resident Agent** | * | |
| **8171 Maple Lawn Blvd.** | * | |
| **Suite 200** | * | |
| **Fulton, MD 20759** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AND DEMAND FOR JURY TRIAL [1]

Plaintiff, Barbara Ann Kelly ("Kelly" or "Plaintiff"), *pro se*, files this Complaint and

Demand for Jury Trial (the "Complaint") against the Defendant Offit Kurman, P.A. ("Offit

Kurman" or "Defendant"), and for cause does allege as follows:

### PARTIES

---

[1] A *pro se* plaintiff is held to a "'less stringent'" standard than a lawyer, and the Court must
liberally construe a *pro se* plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

1.     Plaintiff, Barbara Ann Kelly is a natural person who is a resident of Collier County, Florida.

2.     Defendant, Offit Kurman, P.A. is a is a close corporation formed under the laws of the state of Maryland.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction because this is a case that arises under a federal law. This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1332 because this action involves citizens of different states, and is for a sum greater than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

4.     This Court has personal jurisdiction over the parties.  Personal jurisdiction over the Defendant is appropriate because at all relevant times the Defendant has transacted business in Maryland and currently transacts business in Maryland.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is an entity subject to this Court's personal jurisdiction, a substantial part of the conduct, events and omissions giving rise to the claims occurred within this District, and the Defendant regularly transacts business in this District.

## FACTS

6.     On or about December 13, 2013, Kelly and Offit Kurman entered into a "Credit Agreement" (the "Credit Agreement"). The Credit Agreement required Offit Kurman to perform "Future Legal Services" in connection with four separate legal actions identified in the Credit Agreement. The Credit Agreement required Offit Kurman to prosecute the legal actions identified in the Credit Agreement to their ultimate conclusion, including without limitation, filing all possible appeals, and as more specifically set forth in the Credit Agreement. A copy of the Credit Agreement is attached hereto as **Exhibit A**.

2

7.      The Credit Agreement further provided for a mortgage (the "Mortgage"), *inter*

*alia*, as follows:

> The Total Amount Due shall be secured by that certain mortgage of
> even date herewith in the amount of Five Hundred Fifty Thousand
> Dollars ($550,000.00), a copy of which is attached hereto as Exhibit
> "A" ("Florida Mortgage"), encumbering in favor of Offit Kurman
> (a) the unimproved real property owned by Kelly and located in
> Walton County, Florida and commonly known as Lot 3 Watercolor
> ("Mortgage Parcel 1"), and (b) the unimproved real property owned
> by Kelly and her husband, Myers and located in Walton County,
> Florida and commonly known as Lot 6 Seaside ("Mortgage Parcel
> 2").

8.      The Mortgage, *inter alia*, states:

> This Mortgage, including the assignment of Rents and the security
> interest in the Rents, is given to secure, up to a maximum amount of
> Five Hundred Fifty Thousand and No/100 Dollars ($550,000.00),
> (a) payment by Borrower of the Indebtedness and (b) performance
> of any and all other obligations under the Credit Agreement and this
> Mortgage.

(Emphasis original). Offit Kurman caused the Mortgage to be recorded in the Walton County

Official Records on January 13, 2014, at BK 2940, Page 1825. A copy of the Mortgage is

attached hereto as **Exhibit B**.

9.      On July 29, 2014, "Lot 3 of TOWN CENTER 30-A EAST" ("Lot 3"), also

identified in the Mortgage as "Mortgage Parcel 1," was sold, and Offit Kurman was paid

$335,000.00 from the sale proceeds at closing. After Offit Kurman was paid $335,000.00 from

the Lot 3 sale proceeds, the remaining security under the Mortgage was $215,000. A copy of the

HUD-1 Settlement Statement for the sale of Lot 3 is attached hereto as **Exhibit C**.

10.     On July 29, 2014, in connection with the sale of Lot 3, Offit Kurman executed a

"Partial Release of Mortgage" (the "Partial Release") which, *inter alia*, provides:

> OFFfT KURMAN, P.A. hereby agrees to a release its Mortgage lien
> on the Property upon receipt by OFFIT KURMAN, P,A. of funds in
> the amount of THREE HUNDRFD TIURTY -FIVE THOUSAND

3

> AND NO/100 DOLLARS ($335,000.00) on or before July 29, 2014
> via wire transfer to: [Offit Kurman SunTrust Bank account].

A copy of the Partial Release is attached hereto as **Exhibit D**.

11.     On September 11, 2016, Aaron Bukowitz, Chief Operating Officer of Offit

Kurman, met with Gregory Myers (the "September 11 Meeting"), and provided Gregory Myers

("Myers") with a copy of his agenda/notes that he had prepared in advance of the September 11

Meeting with Myers (the "September 11 Meeting Notes"). The September 11 Meeting Notes,

*inter alia*, state "4 Review Current Status of Credit Agreement":

> $550,000 Credit Agreement Security
> $335,000 Payment in July 2014 from sale (Lot 3)
> **$215,000 Remaining security under the agreement**

(Emphasis added). A copy of the September 11 Meeting Notes is attached hereto as **Exhibit E**.

12.     On September 24, 2015, Aaron Bukowitz sent a letter to Kelly in "RE: *Breach of*

*Credit Agreement"* (the "Breach Letter"). The Breach Letter, *inter alia*, alleges that Kelly was in

breach of the Credit Agreement, that the "breach necessarily cannot be cured," and "that on the

thirty first (31st) day following the date of this letter, all sums due under the Credit Agreement

shall become immediately due and payable and Offit Kurman shall have all of the rights and

remedies provided under the Credit Agreement in addition to all of the rights and remedies

otherwise available at law or equity. Specifically, and without limitation, Offit Kurman will then

have the option to discontinue the provision of legal services in connection with the various

cases expressly set forth in the Credit Agreement." A Copy of the Breach Letter is attached

hereto as **Exhibit F**.

13.     The Breach Letter identifies the alleged breach as follows:

> Specifically, pursuant to the Covenant Regarding Land Sales
> contained in Article 2 of the Credit Agreement, you were to list for
> sale that certain property commonly known as Lot 6 of Seaside, not
> later than January 20, 2014, for a price of not more than $1.995
> million, unless otherwise agreed to in writing by Offit Kurman, P.A.

4

> There has been no agreement to the contrary in writing, and yet this
> property has not been listed for sale at the indicated price.

Contrary to the assertion in the Breach Letter, on August 12, 2014, Offit Kurman issued an email
(the "August 12, 2014 Email") which confirms, in writing, that the reason Lot 6 Seaside ("Lot 6"
or "Mortgage Parcel 2") was not listed for sale pursuant to the terms of the Credit Agreement
was because Offit Kurman instructed that Lot 6 not be listed pursuant to the terms of the Credit
Agreement given the procedural posture of one of the four legal matters identified in the Credit
Agreement, specifically the legal matter identified as the "Seaside Case." A Copy of the August
12, 2104 Email is attached hereto as **Exhibit G**.

14.     On October 5, 2015, Aaron Bukowitz sent a letter to Kelly and Myers in "RE:
Termination of Various Representations (the "Termination Letter"). A Copy of the Termination
Letter is attached hereto as **Exhibit H**.

15.     On October 13, 2016, Offit Kurman issued a "Statement of Account" under
"Client Number 00220238" identified as "Invoice Number 563243." Invoice Number 563243
listed five matters: "00220238.00001 Regions Bank Litigation;" "00220238.00002 Naples
Foreclosure Action;" "00220238.00003 Lot 6 Foreclosure;" "00220238.00004 Silver Laurel
Way Foreclosure;" "00220238.00005 Wetherill Road Foreclosure." A Copy of Invoice Number
563243 is attached hereto as **Exhibit I**.

16.     On October 13, 2016, Offit Kurman issued a "Statement of Account" under
"Client Number 00220144" identified as "Invoice Number 563244." Invoice Number 563244
listed a single matter: "00220144.00003 Seaside Litigation (con't)." A Copy of Invoice Number
563244 is attached hereto as **Exhibit J**.

17.     On December 2, 2016, Gregory Johnson, Esquire with Offit Kurman sent a letter
to Kelly in "Re: SUPPLEMENTAL NOTICE OF DEFAULT DEMAND FOR PAYMENT AND
IMMINENT SUIT FILING Credit Agreement dated December 13, 2013" (the "Supplemental

Notice of Default"). The Supplemental Notice of Default, *inter alia*, states "A copy of each

matter ledger with *A/R* balances and the amortization schedule for repayment of the balance due

have been attached for your review." Attached to the Supplemental Notice of Default is a

document identified as "OFFIT KURMAN, P.A. LEDGER SUMMARY FOR BARBARA ANN

KELLY" which purportedly "lists the various legal matters in which OK represented Barbara

Ann Kelly" (i.e., "Seaside Case;" "Regions Case (Regions Bank Litigation);" "Lot 6 Case (Lot 6

Foreclosure);" "Naples Case (Naples Foreclosure Action);" "Silver Laurel Was [sic]

Foreclosure;" "Weatherill [sic] Road Foreclosure"). A Copy of the Supplemental Notice of

Default is attached hereto as **Exhibit K**.

18. On July 6, 2017, Kelly sent an email to Aaron Bukowitz and Gregory Johnson

with Offit Kurman, "Subject: Mortgage - Legally Required Disclosure - Federal Truth-In-

Lending Act" (the "TILA Email"). The TILA Email, *inter alia*, states:

> Pursuant to the terms of the attached Mortgage and the disclosure
> requirements of the Federal Truth-in-Lending Act, please
> immediately forward to me a copy of the legally required
> disclosure…which disclosure was required by law to be provided to
> me at the time the purported debt/lien was incurred.
>
> **DEFINITIONS.** The following words shall have following when
> used in this Mortgage:
>
> **Indebtedness.** The word "indebtedness" means all principal and
> interest payable by Borrower under the Credit Agreement and any
> amounts expended or advanced by Lender to discharge obligations
> of Grantor or expenses incurred by Lender to enforce obligations of
> Grantor under this Agreement, together with interest on such
> amounts as provided in this Agreement, and any and all other
> present or future, direct or contingent liabilities or indebtedness of
> Borrower identified herein and in the Credit Agreement (or any
> amendment thereto) to the Lender of any nature whatsoever,
> whether classified as secured or unsecured, **except that the word
> "Indebtedness" shall not include any debt subject to the
> disclosure requirements of the Federal Truth-In-Lending Act if,
> at the time such debt is incurred, any legally required disclosure
> of the lien afforded hereby with respect to such debt shall not
> have been made.**

(Emphasis original). Offit Kurman never responded to Kelly's TILA Email request. A copy of the TILA Email is attached hereto as **Exhibit L**.

## COUNT I
### Breach of Contract

19.     Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

20.     The Credit Agreement constitutes a valid contract.

21.     Defendant materially breached the Credit Agreement when it failed and refused to honor its obligations under the Credit Agreement to diligently prosecute the four separate legal actions set forth in the Credit Agreement to their ultimate conclusion, including without limitation, filing all possible appeals, and without just cause, discontinuing the provision of legal services and prematurely withdrawing its representation.

22.     Plaintiff's granting of the Mortgage to Defendant was premised on Defendant diligently prosecuting the four separate legal actions set forth in the Credit Agreement to their ultimate conclusion, including without limitation, filing all possible appeals, which Defendant refused to do by materially breaching the Credit Agreement and discontinuing the provision of legal services and prematurely withdrawing its representation.

23.     Defendant's material breach of the Credit Agreement, discontinuation of the provision of legal services and premature withdrawal of its representation denied Plaintiff the benefit of her bargain such that the Defendant is not entitled to retain the $335,000.00 which Defendant received from the sale of Lot 3.

24.     Defendant's material breach of the Credit Agreement, discontinuation of the provision of legal services and premature withdrawal of its representation denied Plaintiff the benefit of her bargain such that Defendant is not entitled to any payment under the Mortgage.

7

25.     Defendant's material breach of the Credit Agreement, discontinuation of the provision of legal services and premature withdrawal of its representation denied Plaintiff the benefit of her bargain such that the Mortgage is voidable.

26.     Defendant's material breach of the Credit Agreement has actually and proximately caused Plaintiff to be materially harmed, and to incur various damages, costs and expenses associated with Plaintiff being forced to deal with the improper and unlawful actions of Defendant, to which Plaintiff is entitled, at a minimum, to a complete offset and/or recoupment against Defendant, including without limitation, the $335,000.00 which Defendant received from the sale of Lot 3.

WHEREFORE, Plaintiff prays for relief as follows:

(a)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Breach of Contract, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Breach of Contract in a sum *not less than* Ten Million Dollars ($10,000,000.00);

(b)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Breach of Contract;

(c)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages, in an amount *not less than* Ten Million Dollars ($10,000,000.00), as a result of Offit Kurman's Breach of Contract;

(d)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Breach of Contract; and

(e)     For such further and other relief as the Court may deem just and proper.

8

## COUNT II
### Violation of the Federal Truth-In-Lending Act

27. Plaintiff incorporates all previous paragraphs as though they were fully set forth

within this Count of the Complaint.

28. The Offit Kurman law firm failed to provide the legally required Federal Truth-

In-Lending Act disclosures required by the Federal Truth-In-Lending Act, and the Mortgage.

29. On July 6, 2017, Kelly sent an email to Aaron Bukowitz and Gregory Johnson

with Offit Kurman, "Subject: Mortgage - Legally Required Disclosure - Federal Truth-In-

Lending Act" (the "TILA Email"). The TILA Email, *inter alia*, states:

> Pursuant to the terms of the attached Mortgage and the disclosure
> requirements of the Federal Truth-in-Lending Act, please
> immediately forward to me a copy of the legally required
> disclosure…which disclosure was required by law to be provided to
> me at the time the purported debt/lien was incurred.
>
> **DEFINITIONS.** The following words shall have following when
> used in this Mortgage:
>
> **Indebtedness.** The word "indebtedness" means all principal and
> interest payable by Borrower under the Credit Agreement and any
> amounts expended or advanced by Lender to discharge obligations
> of Grantor or expenses incurred by Lender to enforce obligations of
> Grantor under this Agreement, together with interest on such
> amounts as provided in this Agreement, and any and all other
> present or future, direct or contingent liabilities or indebtedness of
> Borrower identified herein and in the Credit Agreement (or any
> amendment thereto) to the Lender of any nature whatsoever,
> whether classified as secured or unsecured, **except that the word
> "Indebtedness" shall not include any debt subject to the
> disclosure requirements of the Federal Truth-In-Lending Act if,
> at the time such debt is incurred, any legally required disclosure
> of the lien afforded hereby with respect to such debt shall not
> have been made.**

(Emphasis original).

30. The Offit Kurman law firm failed to respond to Kelly's July 6, 2017 TILA Email

request.

9

31.     Kelly has been materially damaged as a result of Offit Kurman's violation of the Federal Truth-In-Lending Act, and Kelly is entitled to all rights of setoff, recoupment, damages, attorneys fees and any other remedies as provided for under the Federal Truth-In-Lending Act, and the Mortgage.

WHEREFORE, Plaintiff prays for relief as follows:

(a)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Violation of the Federal Truth-In-Lending Act, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Violation of the Federal Truth-In-Lending Act;

(b)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Violation of the Federal Truth-In-Lending Act;

(c)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages as a result of Offit Kurman's Violation of the Federal Truth-In-Lending Act;

(d)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Violation of the Federal Truth-In-Lending Act; and

(e)     For such further and other relief as the Court may deem just and proper.

## COUNT III
### Violation of the Fair Debt Collection Practices Act

32.     Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

33.     The Offit Kurman law firm is considered a "Debt Collector" pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. (the "FDCPA"), and is subject to the

10

requirements and obligations of the FDCPA. The stated purpose of the FDCPA is "to eliminate

abusive debt collection practices by debt collectors ... and to promote consistent State action to

protect consumers against debt collection abuses." 15 U.S.C. 1692(e).

34.    On July 6, 2017, Kelly sent an email to Aaron Bukowitz and Gregory Johnson

with Offit Kurman, "Subject: Mortgage - Legally Required Disclosure - Federal Truth-In-

Lending Act" (the "TILA Email"). The TILA Email, inter alia, states:

> Pursuant to the terms of the attached Mortgage and the disclosure
> requirements of the Federal Truth-in-Lending Act, please
> immediately forward to me a copy of the legally required
> disclosure…which disclosure was required by law to be provided to
> me at the time the purported debt/lien was incurred.
>
> **DEFINITIONS.** The following words shall have following when
> used in this Mortgage:
>
> **Indebtedness.** The word "indebtedness" means all principal and
> interest payable by Borrower under the Credit Agreement and any
> amounts expended or advanced by Lender to discharge obligations
> of Grantor or expenses incurred by Lender to enforce obligations of
> Grantor under this Agreement, together with interest on such
> amounts as provided in this Agreement, and any and all other
> present or future, direct or contingent liabilities or indebtedness of
> Borrower identified herein and in the Credit Agreement (or any
> amendment thereto) to the Lender of any nature whatsoever,
> whether classified as secured or unsecured, **except that the word
> "Indebtedness" shall not include any debt subject to the
> disclosure requirements of the Federal Truth-In-Lending Act if,
> at the time such debt is incurred, any legally required disclosure
> of the lien afforded hereby with respect to such debt shall not
> have been made.**

(Emphasis original).

35.    The Offit Kurman law firm failed to comply with the requirements of the Fair

Debt Collections Practices Act, including without limitation, sending Kelly the Breach Letter and

the Supplemental Notice of Default, and failing to respond to Kelly's July 6, 2017 TILA Email

request.

11

36. Kelly has been materially damaged as a result of Offit Kurman's violation of the FDCPA, and Kelly is entitled to all rights of setoff, recoupment, damages, attorneys fees and any other remedies as provided for under the FDCPA.

WHEREFORE, Plaintiff prays for relief as follows:

(a) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Violation of the Fair Debt Collection Practices Act, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Violation of the Fair Debt Collection Practices Act;

(b) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Violation of the Fair Debt Collection Practices Act;

(c) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages as a result of Offit Kurman's Violation of the Fair Debt Collection Practices Act;

(d) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Violation of the Fair Debt Collection Practices Act; and

(e) For such further and other relief as the Court may deem just and proper.

## COUNT IV
### Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation

37. Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

38. The Credit Agreement is a valid, binding, and enforceable contract between Plaintiff and Defendant, evidences the Defendant's promise to give legal advice to the Plaintiff, and evidences an attorney-client relationship between the Plaintiff and the Defendant.

12

39. The Defendant made false statements of material fact to Plaintiff that the Credit Agreement and Mortgage were authorized, lawful and in the Plaintiff's best interest.

40. The Defendant represented to Plaintiff, through acts of material omission, that the Credit Agreement and Mortgage were authorized, lawful and in the Plaintiff's best interest.

41. The Defendant knew that its statements were false or made the statements without knowledge of the statements' truth or falsity.

42. The Plaintiff was ignorant of the falsity off the Defendant's representations, and the falsity of these representations is material inasmuch as the Plaintiff reasonably relied on these representations in her decision to execute the Credit Agreement and Mortgage.

43. The Defendant and its principals knew these representations to be false, being persons intimately familiar with the practice of law and the nature of the Credit Agreement and Mortgage and the Plaintiff's legal matters and situation. Despite this familiarity, the Defendant and its principals propagated the false representations and material omissions to the benefit of their business interests and to the detriment of Plaintiff's economic interests.

44. The Defendant intended for its false statements of material fact, false representations, and material omissions to induce Plaintiff to enter into the Credit Agreement and Mortgage.

45. The Defendant had actual knowledge of the wrongfulness of the conduct in question and the high probability that Plaintiff would reasonably rely on the Defendant's false statements of material fact, false representations, and material omissions, resultantly incurring damages.

46. The Defendant and its principals, despite such knowledge, intentionally pursued this conduct.

13

47. The Defendant's false statements of material fact, false representations, and material omissions were each part of a scheme to induce Plaintiff to execute the Credit Agreement and Mortgage.

48. The Plaintiff did justifiably and detrimentally rely on the Defendant's false statements of material fact, false representations, and material omissions.

49. The Defendant's false statements of material fact, false representations, and material omissions resulted in the Plaintiff executing the Credit Agreement and Mortgage, which the Plaintiff would not have done had such Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation not occurred.

50. The Defendant's false statements of material fact, false representations, and material omissions resulted in Plaintiff incurring alleged liability which exceeds that which Plaintiff would have incurred had such Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation not occurred.

51. The Defendant's false statements of material fact, false representations, and material omissions have resulted in the Plaintiff being materially damaged.

WHEREFORE, Plaintiff prays for relief as follows:

(a) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation in a sum *not less than* Ten Million Dollars ($10,000,000.00);

(b) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation;

14

(c)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages, in an amount *not less than* Ten Million Dollars ($10,000,000.00), as a result of Offit Kurman's Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation;

(d)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation; and

(e)     For such further and other relief as the Court may deem just and proper.

## COUNT V
### Breach of Fiduciary Duty

52.     Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

53.     The Credit Agreement is a valid, binding, and enforceable contract between Plaintiff and Defendant, evidences the Defendant's promise to give legal advice to the Plaintiff, and evidences an attorney-client relationship between the Plaintiff and the Defendant.

54.     As Plaintiff's attorneys, the Defendant owed Plaintiff a fiduciary duty to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril.

55.     The Defendant breached its fiduciary duty to Plaintiff by failing to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and

15

diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril, including without limitation, filing frivolous pleadings and failing to properly counsel and advise Plaintiff that the Credit Agreement was not in Plaintiff's best interest.

56. The Defendant breached its fiduciary duty to Plaintiff by making false statements of material fact to Plaintiff, when the Defendant and its principals knew these statements and representations to be false, being persons intimately familiar with the practice of law and the nature of the Credit Agreement and the Plaintiff's legal affairs and situation. Despite this familiarity, the Defendant and its principals propagated the false representations and material omissions to the benefit of their business interests and to the detriment of Plaintiff's economic interests.

57. The Defendant breached its fiduciary duty to Plaintiff by inducing Plaintiff to execute the Credit Agreement and Mortgage when the Defendant had actual knowledge of the wrongfulness of its conduct, and despite such knowledge, intentionally pursued the wrongful conduct to induce Plaintiff to execute the Credit Agreement and Mortgage, which the Plaintiff would not have done had such Breach of Fiduciary Duty not occurred.

58. The Defendant breached its duty by failing to properly counsel and advise Plaintiff in order to limit the litigation in Plaintiff's legal cases, by placing the Defendant's interests in charging fees above Plaintiff's interests, and by generally mishandling, mismanaging, and overbilling in the Plaintiff's legal cases to such an extent that Plaintiff was forced to incur excessive and unnecessary legal fees and expenses, and further, causing Plaintiff's position to become compromised by the failures of the Defendant and its attorneys to manage the Plaintiff's legal cases and associated litigation in a prudent manner.

16

59. The Defendant's false statements, false representations, and material omissions resulted in Plaintiff incurring alleged liability which exceeds that which Plaintiff would have incurred had such breach of fiduciary duty not occurred.

60. The Defendant's breach of its fiduciary duty to Plaintiff by failing to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril, including without limitation, failing to properly counsel and advise Plaintiff that the Credit Agreement and Mortgage were unauthorized, unlawful and not in Plaintiff's best interest, has resulted in the Plaintiff incurring alleged liability which exceeds that which Plaintiff would have incurred had such Breach of Fiduciary Duty not occurred.

61. The Defendant's breach of its fiduciary duty to Plaintiff by failing to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril, including without limitation, failing to properly counsel and advise Plaintiff that the Credit Agreement and Mortgage were unauthorized, unlawful and not in Plaintiff's best interest, has resulted in the Plaintiff being materially damaged.

WHEREFORE, Plaintiff prays for relief as follows:

(a) That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Breach of Fiduciary Duty, and that the Court award Kelly those losses and damages incurred by

17

Kelly as a result of Offit Kurman's Breach of Fiduciary Duty in a sum *not less than* Ten Million Dollars ($10,000,000.00);

(b)    That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Breach of Fiduciary Duty;

(c)    That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages, in an amount *not less than* Ten Million Dollars ($10,000,000.00), as a result of Offit Kurman's Breach of Fiduciary Duty;

(d)    That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Breach of Fiduciary Duty; and

(e)    For such further and other relief as the Court may deem just and proper.

## COUNT VI
## Legal Malpractice

62.    Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

63.    The Credit Agreement is a valid, binding, and enforceable contract between Plaintiff and Defendant, evidences the Defendant's promise to give legal advice to the Plaintiff, and evidences an attorney-client relationship between the Plaintiff and the Defendant.

64.    As Plaintiff's attorneys, the Defendant owed Plaintiff a duty to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and

18

circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril.

65.    The Defendant committed legal malpractice by failing to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril.

66.    The Defendant committed legal malpractice by failing to understand and apply the law correctly to Plaintiff's facts and circumstances, including without limitation, failing to properly understand and apply Florida common law correctly to Plaintiff's facts and circumstances.

67.    The Defendant committed legal malpractice by making false statements of material fact to Plaintiff, when the Defendant and its principals knew these statements and representations to be false, being persons intimately familiar with the practice of law and the nature of the Credit Agreement and Mortgage. Despite this familiarity, the Defendant and its principals propagated the false representations and material omissions to the benefit of their business interests and to the detriment of Plaintiff's economic interests.

68.    The Defendant committed legal malpractice by inducing Plaintiff to execute the Credit Agreement and Mortgage when the Defendant had actual knowledge of the wrongfulness of its conduct, and despite such knowledge, intentionally pursued the wrongful conduct to induce Plaintiff to execute the Credit Agreement and Mortgage, which the Plaintiff would not have done had such legal malpractice not occurred.

19

69. The Defendant committed legal malpractice by failing to properly counsel and advise Plaintiff in order to limit the litigation in Plaintiff's various legal actions, and by generally mishandling and mismanaging the Plaintiff's legal actions to such an extent that Plaintiff was forced to incur excessive and unnecessary legal fees and expenses, and further, causing Plaintiff's position to become compromised by the failures of the Defendant and its attorneys to manage the Plaintiff's legal cases and associated litigation in a prudent manner, and not taking proper steps to remedy same.

70. The Defendant committed legal malpractice by Defendant's acts and omissions in connection with the Credit Agreement and Mortgage.

71. The Defendant committed legal malpractice by failing to take all necessary actions, including without limitation, filing all necessary and appropriate motions and other pleadings with respect to Plaintiff's various legal actions in order to adequately protect the Plaintiff's interests.

72. The Defendant committed legal malpractice by filing frivolous pleadings in Plaintiff's various legal actions.

73. There were numerous other instances of legal malpractice wherein the conduct of the Defendant, and Defendant's individual attorneys, fell below the applicable standard of care during the course of the Defendant's representation of the Plaintiff. The Defendant, and each of its attorneys, failed to exercise reasonable care and skill in their representation of Plaintiff by negligently and carelessly doing all of the acts and omissions as herein alleged, and by generally mishandling, mismanaging, and overbilling in Plaintiff's matters to such an extent that Plaintiff has incurred excessive legal fees and expenses, and Plaintiff's legal and financial position has become compromised by the negligence of the Defendant.

20

74.     Had the Defendant and its individual attorneys not been negligent or otherwise acted wrongfully, the outcome of the Plaintiff's legal cases would have been materially different and Plaintiff would not have suffered the damages, financial losses, and harm which the Plaintiff has suffered.

75.     The conduct of the Defendant, including the conduct of each of its attorneys, in doing the acts and omissions herein alleged, constitutes legal malpractice, and was the proximate and foreseeable cause of the damages, financial losses, and harm which the Plaintiff has suffered and will continue to suffer in the foreseeable future.

WHEREFORE, Plaintiff prays for relief as follows:

(a)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Legal Malpractice, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Legal Malpractice in a sum *not less than* Ten Million Dollars ($10,000,000.00);

(b)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Legal Malpractice;

(c)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages, in an amount *not less than* Ten Million Dollars ($10,000,000.00), as a result of Offit Kurman's Legal Malpractice;

(d)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Legal Malpractice; and

(e)     For such further and other relief as the Court may deem just and proper.

## COUNT VII
### Intentional Infliction of Emotional Distress

76.     Plaintiff incorporates all previous paragraphs as though they were fully set forth within this Count of the Complaint.

77.     Defendant knew on September 24, 2015, when Defendant sent a letter to Plaintiff alleging that Plaintiff breached the Credit Agreement, and advising Plaintiff that Defendant was going to "discontinue the provision of legal services in connection with the various cases expressly set forth in the Credit Agreement," that Defendant's actions were not justified under the terms of the Credit Agreement.

78.     Defendant knew that its intentional, unlawful, and malicious actions with respect to Plaintiff and Plaintiff's Property were causing Plaintiff to experience severe emotional distress and mental pain and suffering.

79.     Defendant intentionally, deliberately, and **recklessly** inflicted severe emotional distress and mental pain and suffering upon the Plaintiff by refusing to honor its obligations under the Credit Agreement.

80.     The Defendant's conduct was motivated by the potential for unreasonable financial gain, constituting unclean hands.

81.     Plaintiff has suffered severe emotional distress and mental pain and suffering, with accompanying physical symptoms as a result of Defendant's intentional, unlawful, and malicious conduct.

82.     Plaintiff's emotional distress was so severe that it has physically manifested itself in the following ways: grinding of teeth and cracked tooth due to grinding; constant chest pains; constant headaches; insomnia; nausea; lower back pain; shortness of breath; numbness in neck and arm; panic attacks; anxiety attacks; development of cysts on skin; and development of cancerous lesions on skin.

83.     Plaintiff continues to suffer severe emotional distress and mental pain and suffering with physical manifestations.

84.     Defendant's material breach of the Credit Agreement has actually and proximately caused Plaintiff to be materially harmed, and to incur various damages, costs and expenses associated with Plaintiff being forced to deal with the improper and unlawful actions of Defendant.

WHEREFORE, Plaintiff prays for relief as follows:

(a)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for Intentional Infliction of Emotional Distress and mental pain and suffering, and that the Court award Kelly those losses and damages incurred by Kelly as a result of Offit Kurman's Intentional Infliction of Emotional Distress and mental pain and suffering in a sum *not less than* Ten Million Dollars ($10,000,000.00);

(b)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for all foreseeable losses and damages incurred by Kelly as a result of Offit Kurman's Intentional Infliction of Emotional Distress and mental pain and suffering;

(c)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for punitive damages, in an amount *not less than* Ten Million Dollars ($10,000,000.00), as a result of Offit Kurman's Intentional Infliction of Emotional Distress and mental pain and suffering;

(d)     That the Court enter a judgment in favor of Kelly, and against Offit Kurman, for attorneys' fees and costs incurred by Kelly in connection with her prosecution of this action as a result of Offit Kurman's Intentional Infliction of Emotional Distress and mental pain and suffering; and

(e)     For such further and other relief as the Court may deem just and proper.

23

## RESERVATION OF RIGHTS

Plaintiff hereby reserve the right to add additional facts and claims not currently known and that may be revealed through discovery in this matter.

RESPECTFULLY SUBMITTED on this 12th day of December, 2017.

Barbara Ann Kelly, *pro se*
700 Gulf Shore Blvd. North
Naples, Florida 34102
(301) 325-3528
bakellymyers@verizon.net

## JURY TRIAL DEMAND

Plaintiff Barbara Ann Kelly does hereby demand a trial by jury on all counts of her Complaint so triable.

Barbara Ann Kelly, *pro se*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of December, 2017, a copy of the foregoing was served via U.S. Mail, first class, postage prepaid, to the following:

Maurice Offit, Esq.
Offit Kurman, P.A.
8171 Maple Lawn Blvd.
Suite 200
Fulton, MD 20759

Barbara Ann Kelly, *pro se*