**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

———————————————

**Case No.  1:17-cv-03668-CCB**

———————————————

# BARBARA ANN KELLY,

*Plaintiff*,

**v.**

# OFFIT KURMAN, P.A.,

*Defendant*.

———————————————

**MEMORANDUM OF LAW IN SUPPORT OF OFFIT KURMAN, P.A.'S
MOTION TO DISMISS**

———————————————

James E. Dickerman, Esq.
Fed. Bar No. 10687
Eccleston and Wolf, P.C.
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
(410) 752-7474
Dickerman@ewmd.com
*Attorney for Defendant.*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ ii

    **CASES** ............................................................................................................. ii

    **STATUTES** ..................................................................................................... v

    **RULES** ............................................................................................................. vi

**INTRODUCTION** ..................................................................................................... 1

**FACTUAL BACKGROUND** ..................................................................................... 2

**RELEVANT PROCEDURAL HISTORY** ................................................................ 4

    **NAPLES CASE** ............................................................................................... 4

    **LOT 6 CASE** ................................................................................................... 5

    **REGIONS CASE** ............................................................................................ 6

    **SEASIDE CASE** ............................................................................................. 7

**STANDARD OF REVIEW** ....................................................................................... 9

**ARGUMENT** ............................................................................................................. 10

    I.   **BREACH OF CONTRACT** ................................................................... 10

    II.   **TRUTH-IN-LENDING-ACT** ............................................................... 14

    III.   **FAIR DEBT COLLECTION PRACTICES ACT** ............................... 17

    IV.   **FRAUD** ................................................................................................. 20

    V.   **BREACH OF FIDUCIARY DUTY** ...................................................... 24

    VI.   **LEGAL MALPRACTICE** ..................................................................... 25

    VII.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** ...... 29

**CONCLUSION** .......................................................................................................... 33

**CERTIFICATE OF SERVICE** ................................................................................. 34

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                          <u>PAGE(S)</u>

<u>Abrams v. Rockville</u>
    88 Md. App. 588 (1991) ................................................. 31

<u>Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC</u>,
    Civil No. JFM-16-02883, 2017 U.S. Dist. LEXIS 22836, 2017 WL 639230
    (D. Md. Feb. 16, 2017) ................................................. 21

<u>Ashcroft v. Iqbal,</u>
    556 U.S. 662 (2009) ................................................. 14, 26

<u>Batson v. Shiflett,</u>
    325 Md. 684 (1992) ................................................. 30, 32

<u>Bell Atl. Corp. v. Twombly,</u>
    550 U.S. 544 (2007) ........................................ 9, 10, 11, 14, 26, 31

<u>Berringer v. Steele,</u>
    133 Md. App. 442 (2000) ................................................. 25, 26, 27

<u>Bey v. Shapiro Brown & Alt, LLP,</u>
    997 F. Supp. 2d 310 (D. Md. 2014) .................................................10

<u>Braun v. Maynard,</u>
    Civil No. 1:09-cv-1897, 2010 U.S. Dist. LEXIS 32160, 2010 WL 1375172
    (D. Md. Mar. 31, 2010) ................................................. 31

<u>Brown v. Ocwen Loan Servicing, LLC,</u>
    Civil No. PJM-14-3454, 2015 U.S. Dist. LEXIS 110133, 2015 WL 5008763
    (D. Md. Aug. 20, 2015) *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016) ............................... 16

<u>CACI Int'l v. St. Paul Fire & Marine Ins. Co.,</u>
    566 F.3d 150, 154 (4th Cir. 2009) ................................................. 10

<u>Carder v. Steiner,</u>
    225 Md. 271 (1961) ................................................. 11

<u>Catler v. Fox,</u>
    212 Md. App. 685 (2013) ................................................. 24-25

<u>Clatterbuck v. City of Charlottesville,</u>
    708 F.3d 549 (4th Cir. 2013) ................................................. 4 n.1, 10

**Crosten v. Kamauf,**
  932 F.Supp. 676 (D. Md. Mar. 25, 1996) ....................................................... 21

**Crouch v. City of Hyatsville,**
  Civil No. DKC-09-2544, 2010 U.S. Dist. LEXIS 97166 (D. Md. Sept. 15, 2010) ........ 31

**Eby v. Reb Realty,**
  495 F.2d 646 (9th Cir. 1974) ...................................................................... 16

**Endosurg Med., Inc. v. EndoMaster Med., Inc.,**
  71 F.Supp.3d 525 (D. Md. 2014) ................................................................. 11

**Farasat v. Paulikas,**
  32 F.Supp.2d 244 (D. Md. 1997) ................................................................. 32

**Fishow v. Simpson,**
  55 Md. App. 312 (1983) ........................................................................ 25, 26

**Frank v. Bloom,**
  634 F.2d 1245 (10th Cir. 1980) ................................................................. 26

**Hamilton v. Ford Motor Credit Co.,**
  66 Md. App. 46 (1986) ........................................................................... 32

**Harris v. Jones,**
  281 Md. 560 (1977) ............................................................................... 32

**Harrison v. Westinghouse Savannah River Co.,**
  176 F.3d 776 (4th Cir. 1999) .............................................................. 22, 23

**Henson v. Santander Consumer USA, Inc.,**
  817 F.3d 131 (4th Cir. 2016) .............................................................. 18, 19

**In re Royal Ahold N.V. Sec. & ERISA Litig.,**
  351 F.Supp.2d 334 (D. Md. 2004) .......................................................... 21-22

**Jones v. Bock,**
  549 U.S. 199 (2007) ............................................................................... 10

**Joseph v. Norman's Health Club, Inc.,**
  532 F.2d 86 (8th Cir. 1976) ................................................................... 15

**Lawley v. Northam,**
  Civil No. ELH-10-1074, 2011 U.S. Dist. LEXIS 137971, 2011 WL 6013279
  (D. Md. Dec. 1, 2011) ............................................................................ 21

**Leese v. Baltimore County**,
    64 Md. App. 442 (1985) ........................................................... 31

**McCray v. Fed. Home Loan Mortg. Corp.,**
    839 F.3d 354 (4th Cir. 2016) ................................................ 17

**Miller v. Fairchild Indus.,**
    97 Md. App. 324 (1993) ......................................................... 21

**Miller v. Ratner,**
    114 Md. App. 18 (1997) ..................................................... 31-32

**Mosley v. OneWest Bank,**
    Civil No. RDB-11-00698, 2011 U.S. Dist. LEXIS 120647, 2011 WL 5005193
    (D. Md. Oct. 19, 2011) ......................................................... 15

**Mourning v. Family Publications Service, Inc.,**
    411 U.S. 356 (1973) ............................................................. 15

**Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,**
    Civil No. 8:18-cv-03460-PX, 2020 U.S. Dist. LEXIS 25577 (D. Md. Feb. 13, 2020) ....31

**Papasan v. Allain,**
    478 U.S. 265 (1986) ............................................... 4 n.1, 10, 27

**Plank v. Cherneski,**
    ___ Md. ___, Misc. No. 3, Sept. Term 2019, 2020 Md. LEXIS 307, 2020 WL 3967980
    (July 14, 2020) ................................................................... 24

**Respess v. Travelers Cas. & Sur. Co. of Am.,**
    770 F.Supp.2d 751 (D. Md. 2011) ................................... 9, 30, 31

**Revene v. Charles County Comm'rs,**
    882 F.2d 870 (4th Cir. 1989) ................................................ 27

**Roach v. Option One Mortg. Corp.,**
    598 F.Supp.2d 741 (E.D. Va. 2009), *aff'd,* 332 Fed. App'x.113 (4th Cir. 2009) ............. 16

**Rotkiske v. Klemm,**
    140 S. Ct. 355 (2019) .......................................................... 19

**RRC Northeast, LLC v. BAA Md., Inc.,**
    413 Md. 638 (2010) ............................................................. 11

**Snyder v. Phelps,**
    580 F.3d 206 (4th Cir. 2009) ................................................ 30

**Space Tech. Dev. Corp. v. Boeing Co.,**
    209 Fed. Appx. 236 (4th Cir. 2006) ................................................................ 13

**Stewart v. Bierman,**
    859 F.Supp.2d 754 (D. Md. 2012) ................................................................ 17

**Stratton v. Mecklenburg County Dep't of Soc. Serv.,**
    521 Fed. App'x. 278 (4th Cir. 2013) ............................................................ 10

**Superior Bank F.S.B. v. Tandem Nat'l Mortg., Inc.,**
    197 F.Supp.2d 298 (D. Md. 2000) ................................................................ 22

**The Redemptorists v. Coulthard Servs., Inc.,**
    145 Md. App. 116 (2002) .............................................................................. 21

**Thomas v. Bethea,**
    351 Md. 513 (1998) ...................................................................................... 25

**United Black Firefighters of Norfolk v. Hirst,**
    604 F.2d 844 (4th Cir. 1979) ....................................................................... 27

**United States v. Kernan Hosp.,**
    880 F.Supp.2d 676 (D. Md. 2012) ................................................................. 9

**Vales v. Preciado,**
    Civil No. DKC 2005-3110, 2007 U.S. Dist. LEXIS 107045, 2007 WL 9782570
    (D. Md. Sep. 19, 2007) ................................................................................ 21

**Veney v. Wyche,**
    293 F.3d 726 (4th Cir. 2002) ....................................................................... 10

**Weller v. Dept of Soc. Servs.,**
    901 F.2d 387 (4th Cir. 1990) ....................................................................... 27

**Wolf v. Fannie Mae,**
    512 Fed. App'x. 336 (4th Cir. 2013) ............................................................ 15

**Zak v. Chelsea Therapeutics Int'l, Ltd.,**
    780 F.3d 597 (4th Cir. 2015) ....................................................................... 10

**STATUTES**                                                                    **PAGE(S)**

15 USCS § 1601 ............................................................................................ 15

15 U.S.C.S § 1602 ................................................................................... 15-16

15 U.S.C.S. § 1640 ................................................................................ 15, 16, 17

15 U.S.C.S. § 1692a ...................................................................................... 18

15 U.S.C.A. §1692g ....................................................................................... 20

15 U.S.C.S. § 1695k ....................................................................................... 19

<u>**RULES**</u>                                                     <u>**PAGE(S)**</u>

Fed. R. Civ. P. 8(a) ......................................................................................... 9

Fed. R. Civ. P. 9(b) ................................................................................. 21, 24

Fed. R. Civ. P. 12(b)(6) ................................................................................. 9

Fed. R. Evid. 201(b) ........................................................................... 4 n.1, 10

Defendant Offit Kurman, P.A. (hereinafter "Offit Kurman"), by and through its attorneys, James E. Dickerman and Eccleston & Wolf, P.C., pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6), hereby submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint, and in support thereof, states as follows:

## INTRODUCTION

Plaintiff Barbara Ann Kelly ("Kelly") originally filed the Complaint in the instant action against Offit Kurman on December 12, 2017. The Complaint asserts seven separate claims against Offit Kurman, each of which fail for multiple reasons.

Plaintiff's Breach of Contract claim (Count I) fails to plausibly allege that Offit Kurman breached the agreement between the parties, while simultaneously establishing that Plaintiff materially breached the contract first. Count II, alleging violation of the Truth-In-Lending Act ("TILA"), should be dismissed because TILA is inapplicable and TILA disclosures were not required, and even if the agreement *were* within the scope of TILA, the claim is time-barred by TILA's one-year statute of limitations.  The Fair Debt Collection Practices Act ("FDCPA")  in Count III must be dismissed because Offit Kurman was collecting its own debt and is not a "debt collector" as defined by the FDCPA, thus the FDCPA does not apply, and regardless any FDCPA claim is time-barred.

Plaintiff's Fraud (Count IV) and Breach of Fiduciary Duty (Count V) claims lack the requisite pleading specificity and are comprised of only general, vague, non-specific conclusory allegations, often contradicted by the record, that fail to satisfy the heightened pleading standard. The Legal Malpractice claim against Offit Kurman (Count VI) is fatally deficient because it is devoid of any factual allegations, fails to assert the necessary elements to state a plausible claim, and because the defective allegations are disproven by evidence of record and subject to judicial

notice. Finally, Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") (Count VII) fails because the allegations come nowhere remotely close to the "extreme and outrageous" conduct necessary to support an IIED claim.

Therefore, the Court should dismiss the Complaint in its entirety, with prejudice and without leave to amend.

## FACTUAL BACKGROUND

Offit Kurman is a law firm serving that provides a comprehensive range of legal services to its clients across many states in a variety of practice areas.  Plaintiff Barbara Ann Kelly ("Kelly") is a former client of Offit Kurman, along with her husband, Gregory B. Myers ("Myers").  On December 13, 2013, Plaintiff and Offit Kurman entered into a Credit Agreement (the "Agreement"), a copy of which is attached to the Complaint as Exhibit A. *See* ECF 1-2. Subject to the terms of the Agreement, Offit Kurman agreed to provide legal services and representation on behalf of Plaintiff in four separate ongoing legal proceedings involving Plaintiff: (1) *Barbara Ann Kelly v. Robert Davis, et al.*, Case No. 3:10-cv-00392-MW-EMT, pending in the United States District Court for the Northern District of Florida, Pensacola Division (the "Seaside Case"); (2) *Barbara Ann Kelly, et al. v. Regions Bank,* Case No. 3:11-cv-252-MCR-EMT pending in the United States District Court for the Northern District of Florida, Pensacola Division (the "Regions Case"); (3) *Regions Bank v. Barbara Ann Kelly, et al.*, Case No. 2010-CA-001162, pending in the Circuit Court for Walton County, Florida (the "Lot 6 Case"); and (4) *US Bank NA, Trustee v. Barbara Ann Kelly, et al.,* Case No. 11-2009-CA-010813, pending in the Circuit Court for Collier County, Florida (the "Naples Case"). *See* ECF 1-2, p. 2 (Article I).

2

In consideration of Offit Kurman's agreement to continue to provide future legal services on behalf of Plaintiff subject to the terms of the Agreement despite Plaintiff's balance of unpaid legal fees in excess of $231,000.00 for legal services previously provided, Plaintiff agreed to secure payment of the outstanding debt and future legal fees for legal services rendered by Offit Kurman by executing the Agreement along with a mortgage (the "Mortgage") secured by two parcels of unimproved real property owned by Plaintiff in Walton County, Florida, known as "Lot 3 Watercolor" and "Lot 6 Seaside" (hereinafter "Lot 6"). *See* ECF 1-2, p. 3, Article 2. Plaintiff agreed that Lot 6 "shall be listed for sale no later than January 20, 2014, and that the list price… will be no more than $1.995 million, unless otherwise agreed in writing by Offit Kurman." ECF 1-2, p. 3 ("Covenant Regarding Lot Sales").  As for an agreement to modify Plaintiff's obligations under the Covenant Regarding Lot Sales, the Agreement states that "[n]o modification of any provision of this Agreement shall be effective unless the same is in writing and signed by all parties, and then such modification shall be effective only in the specific instance or for the purpose for which given." ECF 1-2, p. 5-6.  Thus, any modification to the Covenant Regarding Lot Sales was required to comply with the requirements of the modification clause, and be in writing and signed by all parties. *Id.*

The Agreement also states that "TIME IS OF THE ESSENCE with regard to the performance of the obligations of this Agreement including each and every term, covenant and condition contained herein." ECF 1-2, p. 5. Furthermore, "[t]he granting, with or without notice, to [Plaintiff] of any extension or extension of time for payment of any sum or sums due under this Agreement, or for the opportunity to cure any default, or for the performance of any covenant, condition or agreement hereof shall not in any way release or affect the liability of [Plaintiff]" under the Agreement. ECF 1-2, p. 4.  Under the Agreement, Offit Kurman had the

"sole discretion" to treat certain conduct or events as an "Event of Default," without notice or demand to Plaintiff, including, *inter alia*, "if [Plaintiff] shall breach or fail in the observance or performance of any of the terms, conditions or covenants of this Agreement to be observed or performed by [Plaintiff]… and such breach or failure is not cured within thirty (30) days after delivery of written notice thereof." ECF 1-2, p. 4.  In that regard:

> Upon the occurrence of any Event of Default, at the option of Offit Kurman, all sums due hereunder shall become immediately due and payable and Offit Kurman shall have all of the rights and remedies provided hereunder in addition to all of the rights and remedies otherwise available at law or equity. In addition to the foregoing, and not in limitation thereof, upon the occurrence of any Event of Default, Offit Kurman, at its option, may discontinue providing Future Legal Services to [Plaintiff]. Any failure by Offit Kurman to exercise such options shall not be deemed a waiver of the right to exercise same at any time, including a subsequent Event of Default.

ECF 1-2, p. 5.

## **RELEVANT PROCEDURAL HISTORY**[1]

**Naples Case**: The Naples Case was a mortgage foreclosure complaint filed against Plaintiff and Myers on December 17, 2009 by US Bank N.A., seeking to foreclosure on the real property owned by Plaintiff and Myers located at 700 N Gulf Shore Boulevard, Naples, Florida, 34102 (the "Naples Property"), due to default by nonpayment of the purchase money loan, with an alleged outstanding principal balance of $1,840,000.00.  *See* Naples Case Docket and Complaint, attached as **Exhibits 1-A** and **1-B**.  The Naples Case had been pending for more than *four years* before Offit Kurman became involved, and four separate law firms had previously represented Plaintiff and subsequently sought to terminate their representation and withdraw from the case due, *inter alia*, irreconcilable differences and non-payment by Plaintiff. *See*

---

[1] The attached Exhibits are subject to judicial notice as they are publicly available court records from Plaintiff's four cases covered under the Agreement, integral to and relied upon in asserting the claims, and their accuracy cannot be questioned. *See e.g.* Fed. R. Evid. 201(b); *Clatterbuck v. Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *Papasan v. Allain*, 578 U.S. 265, 283 (1986).

**Exhibit 1-A**, at Dkt. Nos. 17, 54, 93, 94, 113, 127, 266; *see also* Naples Counsel Withdrawals, attached collectively as **Exhibit 1-C.** Despite Offit Kurman's zealous advocacy, after a multi-day trial, a judgment of final foreclosure was entered in September 2015. *See* **Exhibit 1-A** at Dkt. Nos. 597-605, 614-627 & 655-666 (Trial); 682 (Judgment). Plaintiff and Myers then decided to take a strategically divided front and Myers terminated Offit Kurman's representation. **Exhibit 1-D**. At Plaintiff's behest, Offit Kurman filed a Motion to Alter or Amend the judgment, and Motion for a New Trial, both denied by the Court, and noted an appeal for Plaintiff. *See* **Exhibits 1-E**, **1-F** and **1-G**.

After Offit Kurman withdrew their appearance on behalf of Plaintiff (**Exhibit 1-H**), Myers and Plaintiff pursued a campaign of various litigation tactics intended to delay and/or avoid the foreclosure by any means necessary, including filing numerous post-judgment motions (*e.g.* **Ex. 1-A**, Dkt. Nos. 701, 707, 742, 743, 786, 805, 835-36, 896, 926, 932, etc.) multiple bankruptcy filings by both Myers and Plaintiff (Dkt. Nos. 814, 864, 869, 935, 952, 983), and pursuing multiple appeals (Dkt Nos. 730, 793, 806, 813, 875, 882, 914, 969, 1013). As a result, the Naples Case foreclosure action is still pending, more than a decade after it was filed.

**Lot 6 Case**:   The Lot 6 Case was also a foreclosure action filed against Plaintiff and Myers on August 3, 2010 by Regions Bank, seeking to foreclose on Lot 6 for default by nonpayment seeking to recover an unpaid principal balance of $1,053,251.99, and also asserting a breach of contract claim. *See* Lot 6 Case Docket and Complaint, **Exhibits 2-A** and **2-B**.[2] Prior to retaining Offit Kurman to represent her in the Lot 6 foreclosure case, Plaintiff had numerous prior counsel, all of whom sought to terminate their representation, and the case had been

---

[2] The exhibits from the Lot 6 Case are attached in the exact form as they were in when obtained directly from publicly accessible court records search website for the Circuit Court for Walton County, Florida, available at https://www.civitekflorida.com/ocrs/app/search.xhtml, however the public court filings are watermarked "unofficial document," despite being authentic court filings.

pending for more than three and a half years. *See* **Exhibit 2-A** at Dkt. Nos. 37, 48, 49, 64, 154. Regions Bank had filed a Motion for Sanctions against Plaintiff, Myers and their prior counsel based on the abusive and improper conduct in the previous three years that the foreclosure action was pending. *See Id.* at Dkt. Nos. 145, 147, 149; *see also* Sanctions Motions, attached collectively as **Exhibit 2-C.** After Offit Kurman entered its appearance, the parties were able to reach a settlement agreement, leading to the filing of a joint motion to stay pending settlement on April 22, 2015, and ultimately a dismissal of the case pursuant to the settlement agreement between the parties on March 16, 2017. *See* **Exhibit 2-A** at Dkt. Nos. 158, 166 & 163 (appearances of Offit Kurman); Dkt. Nos. 186, 188, 190 (stay and dismissal resulting from settlement); **Exhibit 2-D** (Notice of Dismissal).

      **Regions Case:** The Regions Case was a lawsuit filed by Plaintiff and Myers against Regions Bank on May 24, 2011 relating to Lot 6 in response to Regions Bank's foreclosure action in the Lot 6 Case. The Complaint initially asserted thirteen claims, which included claims for (I) Breach of Contract; (II) Violation of the FDCPA; (IV) Breach of Fiduciary Duty; (IX) Constructive Fraud; Fraud in the Inducement; Fraudulent Misrepresentation; (XI) Negligent Infliction of Emotional Distress; and (XIII) Violations of the Truth-in-Lending – Dodd-Frank Act, Title XIV, similar to the claims asserted herein against Offit Kurman. *See* Regions Case Docket and Complaint, **Exhibits 3-A** and **3-B**. On September 5, 2012, Regions Bank filed a Counterclaim against Plaintiff asserting claims for "Account Stated" and Breach of Contract. *See* **Exhibit 3-C**. In September 2013 the Court granted judgment in favor of Regions Bank on all of Plaintiff's claims against Regions Bank and on Regions Bank's breach of contract counterclaim against Plaintiff. *See* **Exhibit 3-D**. On February 27, 2014, the Court issued an Order and entered

judgment against Plaintiff in the amount of $580,325.22 for Regions Bank's breach of contract counterclaim and attorneys' fees. **Exhibit 3-E**.

Shortly thereafter, Offit Kurman entered its appearance in the Regions Case for the purpose of filing a motion for reconsideration and, if necessary, an appeal. After Offit Kurman noted an appeal to the United States Court of Appeals for the Eleventh Circuit, Case No. 14-12865-BB, Offit Kurman was eventually able to successfully negotiate a settlement agreement between Regions Bank and Plaintiff for a global resolution of the Regions Case and Lot 6 Case. The appeal was ultimately dismissed by stipulation of the parties on April 10, 2015.  *See* **Exhibit 3-F.**

**Seaside Case:**   The seaside case was a lawsuit filed by Plaintiff against numerous individuals and entities related to a high-end planned development community in Walton County, Florida, in which Plaintiff had invested and owned an undeveloped lot. *See* Seaside Case Docket and Complaint, **Exhibits 4A** and **4-B.** Plaintiff was convinced that the homeowners association, developer, various board members and related entities were engaged in gross misconduct, fraud, malfeasance, self-dealing and other illegal conduct with respect to the development of the community, thereby damaging plaintiff and her property rights. Offit Kurman was retained by Plaintiff for the purpose of pursuing the Seaside Case.[3]  Again, the Seaside Case litigation was contentious and Plaintiff's demand to pursue claims and causes of action that bordered on frivolous caused Offit Kurman to file a Motion to Withdraw on July 6, 2012. The Motion citied both non-payment of fees and irreconcilable differences, however the Court reserved, and ultimately did not grant Offit Kurman's Motion to Withdraw until November

---

[3] Another foreclosure action had been also filed against Plaintiff with respect to this property, "Lot 13 in Seaside 15," by SunTrust Bank in the Walton County Circuit Court, Case No. 2010-CA-000419, approximately seven months before the Seaside Case was filed.

10, 2015, more than three years later, after a renewed Motion to Withdraw was filed, and Plaintiff had already retained new counsel. *See* **Exhibit 4-C**. Despite the irreconcilable differences, Offit Kurman continued to zealously advocate on behalf of Plaintiff and pursue the course of action their client was determined to pursue.

After Offit Kurman withdrew from the case, the Court granted summary judgment in favor of the defendants in the Seaside Case and on December 18, 2015, Plaintiff noted an appeal of the judgment to the 11th Cir. Court of Appeals, Case No. 15-15616, on December 18, 2015. *See* **Exhibits 4-D** and **4-E.** After the appellate Court affirmed the District Court's judgment on March 1, 2017 (*See* **Exhibits 4-F** and **4-G**), the District Court granted the defendants' motions seeking costs and attorneys' fees against Plaintiff and entered judgment against Plaintiff. **Exhibit 4-H**. In response, Plaintiff noted *another* appeal of the judgment and award of attorneys' fees against Plaintiff on September 26, 2017, in Case No. 17-14348 (*see* **Exhibit 4-I**), which was remanded due to Plaintiff raising an argument disputing diversity of citizenship for the first time after seven years of litigation. *See* **Exhibits 4-J** and **4-K.** Despite the second appeal being held in abeyance as a result of Plaintiff's diversity argument, just two days later, Plaintiff noted *another* appeal (*see* **Exhibit 4-L**), and after obtaining an extension of time to file a memorandum (*See* **Exhibit 4-A,** Dkt. Nos. 388, 390) and then an "emergency continuance" of the evidentiary hearing to decide Plaintiff's citizenship status relating to her diversity argument (Dkt. Nos. 392, 393), Plaintiff then filed a suggestion of bankruptcy (Dkt. No. 395) just two days before the thrice postponed evidentiary hearing to resolve Plaintiff's lack-of-diversity argument.

Once the bankruptcy stay was lifted on July 19, 2018 (Dkt. No. 398), Plaintiff unsuccessfully challenged the Court's decision to lift the stay (Dkt. Nos. 400, 402), and the Court found that Plaintiff was a citizen of Maryland for purposes of diversity, and then granted a

motion for sanctions and an award of attorneys' fees against Plaintiff. *See* Dkt Nos. 404 – 406, 409-41; **Exhibits 4-M** and **4-N**. Thereafter, the Appellate Court dismissed the pending appeal for lack of prosecution (Dkt. No. 417), but later granted Plaintiff's motion to reinstate the appeal on October 10, 2019 (Dkt. No. 418), only for Plaintiff to file a suggestion of bankruptcy on November 4, 2019, causing the appeal to be automatically stayed. *See* **Exhibit 4-J**. Plaintiff's Chapter 13 bankruptcy case (Case No. 19-24525-LSS) was dismissed at Plaintiff's request on July 8, 2020, and the 11th Circuit Court of Appeals lifted the automatic bankruptcy stay on July 30, 2020, nearly 10 years after the initial Complaint was filed in October, 2010. *Id.*; *see also* **Exhibit 4-O**.

The foregoing legal matters are but a sampling of the numerous legal proceedings Plaintiff has been involved with over the past decade, however, they are representative of Plaintiff's determination to exploit improper, dilatory and vexatious litigation tactics, and provide important context and background to frame the present claims brought by Plaintiff.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6) a complaint is subject to dismissal "if it fails to state a claim upon which relief can be granted." *United States v. Kernan Hosp.*, 880 F.Supp.2d 676, 682 (D. Md. 2012); Fed. R. Civ. P. 12(b)(6). Federal precedent "require[s] complaints in civil actions [to] be alleged with greater specificity…" *Kernan*, 880 F.Supp.2d at 682 (citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F.Supp.2d 751, 755 (D. Md. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," as the plaintiff has an obligation to establish the grounds showing an entitlement to relief, which

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Court is not required to accept as true legal conclusions couched as fact, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When reviewing a motion to dismiss, the court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed. *See, e.g., CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015). Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see also* Fed. R. Evid. 201(b) (courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Courts do not accept "allegations that contradict matters properly subject to judicial notice" such as the records of prior court proceedings. *Stratton v. Mecklenburg County Dep't of Soc. Serv.*, 521 Fed. Appx. 278, 288, 290 n. 22 (4th Cir. 2013); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). A plaintiff fails to state a claim where the allegations on the face of the complaint show that an affirmative defense, such as limitations, would bar any recovery. *Jones v. Bock*, 549 U.S. 199, 214-215 (2007).

## ARGUMENT

### I.   Breach of Contract

Under Maryland law a claim for breach of contract "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the

plaintiff and a breach of that obligation by [the] defendant." *Endosurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F.Supp.3d 525, 540 (D. Md. 2014) (*quoting RRC Northeast, LLC v. BAA Md., Inc.,* 413 Md. 638, 655 (2010)) (*emphasis in original*). In considering a breach of contract claim has been sufficiently pled, "any ambiguity or uncertainty in the allegations is to be construed against the pleader." *Id.* (*quoting Carder v. Steiner,* 225 Md. 271, 276 (1961). Plaintiff's breach of contract claim fails for numerous reasons, and should be dismissed by this Court. First, Plaintiff's breach of contract claim relies on conclusory allegations that are insufficient to establish a plausible claim. *Twombly*, 550 U.S. at 555.

Plaintiff's breach of contract claim is based upon the fundamentally incorrect legal conclusion that Offit Kurman breached the Agreement by "discontinuing the provision of legal services and prematurely withdrawing its representation." ECF 1, ¶ 21-25. Plaintiff cannot refute the fact that the Agreement required Plaintiff to list Lot 6 for sale on or before January 20, 2014, or that Plaintiff failed to abide by this material contractual term. *See* ECF 1-2, p. 3 ("Covenant Regarding Lot Sales"); *and* ECF 1, ¶ 13 (admitting that Lot 6 was not listed as required by the Agreement). There is also can be no dispute that Plaintiff's failure to list Lot 6 as required by the Agreement constitutes an "Event of Default" thereunder, thereby giving Offit Kurman the right, in its sole discretion, to discontinue the provision of legal services on behalf of Plaintiff. *See* ECF 1-2, p. 5 ("upon the occurrence of any Event of Default, Offit Kurman, at its option, may discontinue providing Future Legal Services to Kelly.").

Offit Kurman was entitled to exercise its absolute right to treat Plaintiff's failure to comply with the Covenant Regarding Lot Sales as an Event of Default at any time. *Id.* ("Any failure by Offit Kurman to exercise such options shall not be deemed a waiver of the right to exercise at any time, including a subsequent Event of Default."). Further reinforcing the fact that

Offit Kurman cannot be deemed to have waived or relinquished the right to treat Plaintiff's breach of the Agreement as an Event of Default and discontinue legal representation as a result thereof, is that Offit Kurman also had the unilateral discretion to grant Plaintiff, without notice, "any extension or extensions of time… for the opportunity to cure any default, or for the performance of any covenant, condition or agreement" without "in any way release[ing] or affect[ing] the liability of [Plaintiff]…" ECF 1-2, p. 4.

The only basis alleged to support Plaintiff's claim is an email from Timothy C. Lynch, one of the attorneys with Offit Kurman working on Plaintiff's cases, that Plaintiff argues "confirms, in writing, that the reason Lot 6 Seaside … was not listed for sale pursuant to the terms of the Credit Agreement was because Offit Kurman instructed that Lot 6 <u>not be listed</u> pursuant to the terms of the Credit Agreement…" ECF 1, ¶ 13.  This assertion is belied by the substance of the email which clearly does not "confirm" that Offit Kurman "instructed that Lot 6 not be listed" per the Agreement. *See* Exhibit G, ECF 1-8. The email states as follows:

> Let me know when you want to touch base. Have you paid the outstanding 3rd party invoices? We are getting dunning letters.
>
> Also, we need to talk about the Regions letter, regions collection efforts and when to list Lot 6.  **I think that you should list it ASAP in case things do not go as planned at our hearing.**  I think that Regions will be super aggressive on its collection efforts.

ECF 1-8. (*emphasis added*).  Not only does the email not *instruct* Plaintiff not to list Lot 6, it reveals the opposite, as Mr. Lynch was *urging* that Lot 6 needs to be listed "ASAP." *Id.*

Furthermore, the email was sent nearly seven months after Plaintiff was contractually obligated to list Lot 6 for sale, and cannot rationally support the conclusion that that Offit Kurman "otherwise agreed in writing" to modify the Covenant Regarding Lot Sales.  Obviously, as of August 12, 2014, the property had not been listed, thereby constituting a material breach of the Agreement, unless Plaintiff can demonstrate that Offit Kurman "otherwise agreed in

writing." In that respect, the modification clause in the Agreement states that no modification of any provision of the Agreement is effective unless and until the modification is in writing and signed by all parties. *See* ECF 1-2, pp. 5-6. Not only is the email not signed by Plaintiff, but it is not even addressed to her. Plaintiff offers no written agreement signed by all parties to modify Plaintiff's obligation to list Lot 6 per the terms of the Agreement. Thus, it is clear as a matter of contract that there was no valid or legally effective agreement by Offit Kurman to modify the Covenant Regarding Lot Sales, and thus Offit Kurman had the contractual right to discontinue the provision of legal services following the occurrence of an Event of Default, Plaintiff's failure to list Lot 6 as agreed. Because Offit Kurman had the contractual right to discontinue legal representation, the entire basis of Plaintiff's breach of contract claim is disproven and defeated.

Moreover, no logical inference can be drawn that the purpose of the email was to retroactively modify Plaintiff's obligations under the Agreement, or that the discussion had anything to do with the Agreement whatsoever, for that matter. Instead, a plain reading of the email also shows a discussion regarding litigation strategy concerning the ongoing legal proceedings. Plaintiff's legal conclusion that Offit Kurman improperly discontinued the provision of legal services in violation of the Agreement lacks any legitimate factual or legal support. It is clear that Offit Kurman had the contractual right to discontinue its representation based upon Plaintiff's material breach of the Agreement and the occurrence of an Event of Default, and therefore cannot be liable for exercising its legal right.

Because the record clearly contradicts Plaintiff's conclusory allegations, the Court should reject Plaintiff's legal theory. *See Space Tech. Dev. Corp. v. Boeing Co.*, 209 Fed. Appx. 236, 238-39 (4th Cir. 2006) ("the Court need not accept as true conclusions or inferences from the complaint that are contradicted by the attached exhibits."). Because it is evident that Plaintiff is

incapable of stating any plausible claim against Offit Kurman for breach of contract upon which relief can be granted, Count I should be dismissed, with prejudice, and without leave to amend.

## II.   <u>Count II – TILA Violation</u>

Plaintiff's purported claim against Offit Kurman alleging violation of the Truth-In-Lending Act (TILA) is based on the allegations that Offit Kurman "failed to provide the legally required Federal Truth-In-Lending Act disclosures," and that Offit Kurman failed to respond to an email from Plaintiff on July 6, 2017 asserting that Offit Kurman failed to provide TILA disclosures and demanding that Offit Kurman "immediately" provide Plaintiff with copies of the disclosures Plaintiff contends required to be made at the time the debt was incurred. *See* Compl., ECF 1, ¶¶ 28-30. As a result, Plaintiff concludes she "has been materially damaged" and "is entitled to all rights of setoff, recoupment, damages, attorneys fees and other remedies" under TILA and the Mortgage. *Id.* at ¶ 31. It is clear that Plaintiff failed to assert facts establishing any claim under TILA, and even if Plaintiff had, such a claim would nonetheless clearly be barred by limitations.

Plaintiff's TILA claim is comprised of nothing more than labels and conclusions that Offit Kurman was required to provide Plaintiff disclosures under TILA but failed to do so and therefore has violated TILA; without any factual allegations whatsoever identifying what specific disclosures Offit Kurman was supposedly required to make, which disclosures were not given, or any indication what provisions of TILA were allegedly violated. The Court is not required to accept these labels and conclusions as true, and thus it is clear that Plaintiff has failed to state a plausible claim for violation of TILA as a matter of law, and Count II of the Complaint should be dismissed. *See Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Moreover, even if Plaintiff had sufficiently pled a claim against Offit Kurman for a violation of TILA, it would nonetheless be subject to dismissal for various reasons.

The fundamental purpose of TILA is to "**to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.**" 15 USCS § 1601. (*emphasis added*); *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 364 (1973);[4] *Joseph v. Norman's Health Club, Inc.*, 532 F.2d 86, 90 (8th Cir. 1976) ("fundamental purpose of [TILA] is to require creditors to disclose the "true" cost of consumer credit, so that consumers can make informed choices among available methods of payment."). Thus, "[i]n furtherance of informed use of credit, TILA requires that a creditor make certain disclosures of terms when a loan transaction is made." *Wolf v. Fannie Mae*, 512 Fed.App'x. 336, 339 (4th Cir. 2013).

In order to be liable for a TILA violation, one must be a "creditor" as defined under TILA, or an assignee of a creditor. *See* 15 U.S.C.S. § 1640; s*ee also Mosley v. OneWest Bank*, Civil Action No. RDB-11-00698, 2011 U.S. Dist. LEXIS 120647, at *9, 2011 WL 5005193 (D. Md. Oct. 19, 2011) (noting that TILA only applies to "creditors" and assignees). TILA defines a "creditor" as:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from

---

[4] In *Mourning,* The Supreme Court explained that TILA was designed in response to the rapidly expanding consumer credit market following World War II to remedy problems that had developed from consumers' "remarkabl[e] ignoran[ce] of the nature of their credit obligations and the costs of deferring payment … [b]ecause of the divergent, and at times fraudulent, practices by which consumers were informed of the terms of the credit extended to them," preventing many consumers "from shopping for the best terms available and, at times, were prompted to assume liabilities they could not meet."

the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C.S § 1602(g). Plaintiff fails to allege any facts establishing that Offit Kurman falls within the definition of "creditor" under TILA, namely that Offit Kurman regularly extends consumer loans and credit within the scope of TILA. For that matter, there is no good faith basis upon which Plaintiff could allege sufficient facts to establish that Offit Kurman is a "creditor" under TILA in order to obligate Offit Kurman to make the requisite TILA disclosures, simply because Offit Kurman does not satisfy this definition. *See Eby v. Reb Realty*, 495 F.2d 646, 648-50 (9th Cir. 1974) (holding the requirements of TILA do not apply to "those lenders whose extensions of credit are an occasional, isolated and incidental portion of their business."). Because Plaintiff cannot establish facts showing that Offit Kurman qualifies as a creditor under TILA or that the TILA disclosure requirements apply to the Offit Kurman or the Agreement, Count II must be dismissed, with prejudice, for failure to state a claim.

Furthermore, even if Plaintiff could establish that Offit Kurman was a "creditor" subject to the disclosure requirements under TILA, Plaintiff's claim would nonetheless clearly be time-barred by the applicable statute of limitations. The "date of the occurrence" for any TILA claim based on non-disclosure "is the date on which the borrower accepts the creditor's extension of credit." *Brown v. Ocwen Loan Servicing, LLC*, Civil No. PJM-14-3454, 2015 U.S. Dist. LEXIS 110133, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015) *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016). Pursuant to 15 U.S.C.S. § 1640(e), any action seeking to assert a claim for civil liability based upon an alleged violation of TILA must be brought "within one-year from the date of the occurrence of the violation." 15 U.S.C.S. § 1640(e); *see also Roach v. Option One Mortg. Corp.*, 598 F.Supp.2d 741, 750 (E.D. Va. 2009), *aff'd*, 332 Fed. App'x.113 (4th Cir. 2009). Because the Agreement was executed on December 13, 2013, the statute of limitations began to run from that

date on any potential TILA claim that Plaintiff may have had. *Id., see also* ECF 1-2, pp. 2 & 7 (Agreement dated "13th day of December, 2013"). Plaintiff filed the Complaint in the instant action on December 12, 2017, one day shy of four years after the Agreement was executed. *See* ECF 1. Thus, Plaintiff's TILA claim is absolutely barred by limitations, as it was filed nearly three full years past the limitations date. *See, e.g., McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 361-62 (4th Cir. 2016) (affirming trial Court's dismissal of TILA claim not filed within one-year limitations period); 15 U.S.C.S. § 1640(e).

Accordingly, Count II of the Complaint fails to state a claim upon which relief can be granted, and must be dismissed, with prejudice.

### III.   Count III – FDCPA Violation

The entirety of Plaintiff's FDCPA claim is based on (1) the formulaic assertion that "Offit Kurman law firm is considered a "Debt Collector" pursuant to the [FDCPA] and is subject to the requirements and obligations of the FDCPA" (ECF 1, ¶ 33); (2) the conclusion that Offit Kurman "failed to comply with the requirements of the [FDCPA], including without limitation, sending Kelly the Breach Letter and Supplemental Notice of Default, and failing to respond to Kelly's July 6, 2017 TILA Email request" (ECF 1, ¶ 35)[5]; and (3) that "Kelly has been materially damaged as a result of Offit Kurman's violation of the FDCPA, an Kelly is entitled to" a variety of contractual, legal and equitable remedies (ECF 1, ¶ 36). In order to state a claim under the FDCPA, Plaintiff must allege that: 1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Stewart v.*

---

[5] The "Breach Letter," the "Supplemental Notice of Default" and Kelly's "July 6, 2017 TILA Email" are attached to the Complaint, respectively as Exhibit F (ECF 1-7), Exhibit K (ECF 1-12) and Exhibit L (ECF 1-13).

*Bierman*, 859 F.Supp.2d 754, 759 (D. Md. 2012). As discussed, *supra*, Plaintiff's reliance on baseless conclusory allegations and formulaic recitations of elements of a cause of action fail to satisfy the pleading requirements under the Federal Rules, and cannot suffice to state a plausible claim. Moreover, setting aside the fatal pleading deficiencies, Plaintiff's legal conclusion that Offit Kurman satisfies the definition of "debt collector" under the FDCPA is clearly incorrect as a matter of law, and disproven by the allegations of the Complaint and the evidence of record.

Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.S. § 1692a(6). A "creditor," on the other hand, is "any person who offers or extends credit creating a debt or to whom a debt is owed" unless that person obtains a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* at § 1692a(4). The definition of "debt collector" under the FDCPA does not include a creditor, or an officer or employee of the creditor attempting to collect debts for the creditor. 15 U.S.C.S. §1692a(6)(A).  The FDCPA only regulates the conduct of *debt collectors*, not creditors.  *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016).

There is no genuine dispute that Offit Kurman is a "creditor" and not a "debt collector" pursuant to the FDCPA. The Agreement was executed to secure payment of preexisting debts owed by Plaintiff to Offit Kurman, as well as future fees for continuing legal representation. The allegations of the Complaint relate exclusively to conduct by Offit Kurman and/or its employees and agents, taken in the name of and on behalf of Offit Kurman, allegedly seeking to collect the debt owed by Plaintiff to Offit Kurman. *See generally* Complaint, ECF 1; Agreement at ECF 1-

18

2; Breach Letter, ECF 1-7 (Offit Kurman letterhead, signed by an Offit Kurman partner "*For the Firm*"); Supplemental Notice of Default, ECF 1-12 (letter on Offit Kurman letterhead, by Offit Kurman attorney in his capacity as legal counsel on behalf of Offit Kurman). Thus, Plaintiff's FDCPA claim fails as a matter of law because the allegations relate to a creditor's attempts to collect its own debt, which is outside the scope of the FDCPA. *See Henson*, 817 F.3d at 135.

Moreover, even if the FDCPA did apply, any such claim would be barred by the FDCPA's one-year statute of limitations, which runs from the date of the alleged violation, not the alleged date of discovery. *See* 15 U.S.C.S. § 1695k(d) (requiring any civil action alleging violation of the FDCPA to be brought "within one year from the date on which the violation occurs."); *see also Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (no discovery rule under the FDCPA). Plaintiff claims that the Offit Kurman violated the FDCPA by sending the Breach Letter on September 24, 2015 (*see* ECF 1-7) and by sending the Supplemental Notice of Default on December 2, 2016 (*see* ECF 1-12). Both of these purported violations took place more than one year before the Complaint was filed on December 12, 2017, and are absolutely barred by limitations. *See* 15 U.S.C.S. §1692k(d).  Plaintiff also argues that Offit Kurman's failure to respond to Plaintiff's July 6, 2017 "Mortgage – Legally Required Disclosure – Federal Truth-In-Lending Act" email constitutes a separate violation of the FDCPA, likely in an attempt to circumvent limitations. The email, attached to the Complaint as Exhibit L (ECF 1-13), is addressed to Aaron Bukowitz, in his capacity as the attorney representing Offit Kurman with respect to Offit Kurman's claim filed in Myers's Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the District of Maryland, Case No. 15-26033-WIL. The email itself makes no reference to the FDCPA, and instead states:

> Pursuant to the terms of the attached Mortgage and the disclosure requirements of the Federal Truth-In-Lending Act, please immediately forward to me a copy of the legally

> required disclosure of the purported debt/lien which Offit Kurman, P.A. is claiming in the
> above referenced case, which disclosure was required by law to be provided to me at the
> time the purported debt/lien was incurred.

ECF 1-13. As discussed above, the disclosure requirements under TILA clearly do not apply, and

thus Offit Kurman was not legally obligated to respond to Plaintiff's baseless demand for TILA

that Plaintiff claimed to be entitled to. Moreover, Plaintiff's email concerned Offit Kurman's

claim filed against Myers, and did not concern any debt collection attempts against Plaintiff,

such that there is no logical basis upon which Plaintiff can morph the alleged conduct into a

FDCPA violation, merely because it conveniently occurred within one-year prior to the date the

Complaint was filed.

    To the extent that the Court is persuaded to interpret the allegation regarding Offit

Kurman's non-response to Plaintiff's July 6, 2017 email as an allegation that Offit Kurman failed

to validate a disputed debt under 15 U.S.C.A. §1692g, such a claim fails for a litany of reasons,

including (1) because the FDCPA does not apply to Offit Kurman; (2) the disputed debt

collection activity was not against Plaintiff; (3) the disputed communication was not an initial

communication; (4) the communication at issue was an *amended claim* asserted against a third-

party approximately nine months before Plaintiff's email, far outside the 30-day window to

dispute the debt; and (4) the amended claim was filed in a formal legal proceeding. *See* 15

U.S.C.S. §1692g(a) through (d).  Therefore, Plaintiff's contention that Offit Kurman's failure to

respond to her July 2017 email demanding TILA disclosures she was not entitled to in the first

place, in connection with a claim filed in an ongoing bankruptcy proceeding by a third-party,

cannot logically form the basis of a FDCPA violation, notwithstanding the fact that the FDCPA

clearly is inapplicable to Offit Kurman under the circumstances.

Thus, Plaintiff has failed to state any viable claim against Offit Kurman for violation of the FDCPA, and Count III of the Complaint must be dismissed with prejudice, and without leave to amend.

## IV.   Count IV – Fraud

Although Count IV of the Complaint lists three separate causes of action, "Constructive Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation," each sound in fraud and require the same necessary elements: (1) that the defendant made a false statement of material fact; (2) with actual knowledge of the falsity at time it was made, or with such reckless indifference as to its truth or falsity that actual knowledge is imputed; (3) for the purpose of defrauding the plaintiff (scienter); (4) justifiable reliance on the false statement by the plaintiff; and (5) that the plaintiff's damage were directly and proximately resulted therefrom. *See Vales v. Preciado*, Civil No. DKC 2005-3110, 2007 U.S. Dist. LEXIS 107045, at *9, 2007 WL 9782570 (D. Md. Sep. 19, 2007) (*quoting The Redemptorists v. Coulthard Servs., Inc*., 145 Md.App. 116, 153 (2002)) (constructive fraud); *Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC*, Civil No. JFM-16-02883, 2017 U.S. Dist. LEXIS 22836, at *14, 2017 WL 639230 (D. Md. Feb. 16, 2017) (*quoting Lawley v. Northam*, Civil No. ELH-10-1074, 2011 U.S. Dist. LEXIS 137971, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011) (fraudulent inducement); *Crosten v. Kamauf*, 932 F.Supp. 676, 685-86 (D. Md. Mar. 25, 1996) (*quoting Miller v. Fairchild Indus.*, 97 Md. App. 324, 341-42 (1993)) (fraudulent misrepresentation).

Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In order to survive a motion to dismiss, Plaintiff is required to "plead all of the elements of fraud with particularity," including "with regard to the time, place, speaker and contents, as well as the manner in which

statements are false and the specific acts raising an inference of fraud – the who, what, where, why and when." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F.Supp.2d 334, 368 (D. Md. 2004) (*citing, inter alia, Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)); *see also Superior Bank F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D. Md. 2000).

Plaintiff's fraud claim relies upon conclusory allegations that Offit Kurman "made false representations of material fact" and/or "represented to Plaintiff, through acts of material omission," that "the Credit Agreement and Mortgage were authorized, lawful and in the Plaintiff's best interest." (ECF 1, ¶¶ 39-40). The remaining allegations in Count IV similarly lack any factual support or specificity. Despite regurgitating the conclusory allegation that Offit Kurman made "false statements of material fact, false representations, and material omissions" *ad nauseam*, in the following paragraphs (ECF 1, ¶¶ 44, 45, 47-51), Plaintiff fails to allege with any degree of particularity (1) the specific contents of the alleged false representations; (2) who made them; (3) when they were made; (4) where they were made; (5) the manner in which they were made and in what context; (6) who exactly they were made to; (7) how they were allegedly false; or (8) what specific conduct raises an inference of fraud. In doing so, Plaintiff effectively deprives Offit Kurman of notice of the specific nature and basis for the fraud claim and any meaningful opportunity to evaluate the veracity of the claims or potential viable defenses, thereby depriving Offit Kurman due process. Thus, Plaintiff has clearly failed to state a plausible claim for fraud pursuant to the heightened pleading requirements under the Federal Rules, and Count IV must be dismissed.

Additionally, the allegations purportedly giving rise to liability against Offit Kurman are directly contradicted by the evidence of record. For instance, Plaintiff alleges that Offit Kurman

falsely represented to Plaintiff that the Agreement and Mortgage were authorized, lawful and in Plaintiff's best interests, and that Plaintiff "reasonably relied on these representations in her decision to execute the Credit Agreement and Mortgage" (ECF 1, ¶ 42), yet in the Agreement, Plaintiff expressly acknowledged, agreed and affirmatively represented "that she has been duly advised by counsel concerning all aspects of the transactions contemplated [under the Agreement] or has not consulted counsel after having been advised and provided an opportunity to do so." ECF 1-2, p. 5. The Agreement also contains an integration clause, which establishes that "[t]his Agreement contains the entire agreement of the parties with respect to the matters herein, and no other agreement, statement or promise made by any party hereto, or any employee, officer, attorney, agent, or other representative of any party hereto, shall be valid or binding." ECF 1-2, p. 6.   Thus, a cursory review of the Agreement demonstrates a complete defense to Plaintiff's fraud claim on the face of the document, and reveals that Plaintiff's allegations are untenable.

Moreover, it would be illogical for the Court to assume the truth of Plaintiff's bald allegations that at the time the Agreement was executed, Offit Kurman never intended to perform under the Agreement and render future legal services on Plaintiff's behalf in the various pending legal proceedings, given that Offit Kurman was already continuing to render legal services despite Plaintiff having already accrued nearly a quarter million dollars in unpaid legal fees, and considering that Offit Kurman did, in fact, continue to render legal services on behalf of Plaintiff for years after the Agreement was signed, including long after Plaintiff defaulted on the Agreement.   Instead, the only reasonable inference the Court could possibly draw from the record is that it was actually *Plaintiff* who never intended to comply with the Agreement, never intended to pay Offit Kurman's legal fees, and never intended to list Lot 6 as required to ensure

such payment. Regardless, mere allegations of "fraud by hindsight" do not satisfy the pleading requirement of Rule 9(b). *See, e.g., Harrison,* 176 F.3d at 784.

Thus, it is clear that Plaintiff has failed to plead a viable fraud claim, and Count IV should be dismissed with prejudice and without leave to amend.

**V.  <u>Count V – Breach of Fiduciary Duty</u>**

Although, historically, Maryland has not recognized an independent cause of action for breach of fiduciary duty, in response to a certified question, the Court of Appeals recently decided that breach of fiduciary duty is now a recognized cause of action. *See Plank v. Cherneski*, ___ Md. ___, Misc. No. 3, Sept. Term 2019, 2020 Md. LEXIS 307, at *64, 2020 WL 3967980 (July 14, 2020).  The Court of Appeals held that the relief that is available will depend on the historical remedies provided by common law, statute and contract. *Id.* To establish an independent cause of action for breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Id.,* 2020 Md. LEXIS 307, at *66 (*citations omitted*).  While Plaintiff has asserted a breach of fiduciary duty claim as a separate cause of action from her legal malpractice claim, a cursory review of the two claims reveals that the two are virtually identical, except for differing conclusory labels of "legal malpractice" and "breach of fiduciary duty" repeated throughout.  Plaintiff's breach of fiduciary duty claim, therefore, suffers from the same fatal defects and is subject to the same arguments as her legal malpractice claim. Accordingly, the arguments set forth in the following section as to legal malpractice are hereby incorporated and reasserted herein, by reference, as to Plaintiff's nearly identical breach of fiduciary duty claim, and for the reasons set forth below, this claim should likewise be dismissed for failure to state a claim.  *See, e.g. Catler v. Fox,* 212 Md. App. 685, 716-17 (2013) (addressing the

impropriety of an attempt to assert identical breach of fiduciary duty and legal malpractice claims, affirming dismissal of both claims on the same grounds).

## VI.   <u>Count VI – Legal Malpractice</u>

Plaintiff's legal malpractice claim fails as it is based exclusively on conclusory allegations, many of which are directly contradicted by matters subject to judicial notice, and because Plaintiff's is incapable of demonstrating that her claims or defenses were meritorious or establishing any remote degree of proximate causation. In Maryland, "[t]he elements of a legal malpractice action in a civil case include: (1) the employment of the lawyer, (2) the lawyer's neglect of a duty, and (3) loss to the client proximately caused by the neglect of duty." *Berringer v. Steele*, 133 Md. App. 442, 473 (2000) (*citing Thomas v. Bethea,* 351 Md. 513, 528-29 (1998)). Unless a party has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney even though the latter were guilty of gross negligence. *Fishow v. Simpson*, 55 Md. App. 312, 323 (1983) (*citation omitted*). The *Berringer* Court's explanation of the causation element is highly instructive:

> The rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be; or that if conduct of an attorney with respect to litigation results in no damage to his client the attorney is not liable. *See* 7A C.J.S. *Attorney & Client* § 258 (1980).

> Thus, in order to recover, the client must establish that he or she probably would have prevailed in the underlying action, but for the lawyer's negligence, and that the litigant was harmed by the lawyer's conduct. *Cf. Riordan v. Jones*, 793 F. Supp. 650, 651 (D. Md. 1992) ("The matter for which the attorney was engaged must have had sufficient merit that any malpractice actually caused damages to the plaintiff. This requires that the malpractice plaintiff demonstrate merit in the underlying claim . . . ." (citing *Fishow*, 55 Md. App. at 323)), *aff'd*, 989 F.2d 494 (4th Cir. 1993); *Brown v. E. W. Bliss Co.*, 72 F.R.D. 198, 200 (D. Md. 1976) (stating that, to recover under a malpractice theory against their attorney, the plaintiffs need "prove that they had a proper claim and are entitled to damages, and further allege and show that their failure to recover on their claim was due to the negligence of their attorney").

*Berringer*, 133 Md. App. at 473-474.  Additionally, "[c]ounsel's trial tactics are not a basis for a malpractice action." *Fishow*, 55 Md. App. at 322 (*citing Frank v. Bloom*, 634 F.2d 1245 (10th Cir. 1980)).  It is abundantly clear that Plaintiff's legal malpractice claim is contrived, lacks any factual basis, and cannot state a claim upon which relief can be granted by this Court.

The Complaint alleges that Offit Kurman "owed Plaintiff a duty to provide skillful and competent representation and to act at all times in good faith and in the Plaintiff's best interests, to perform the services for which they were retained with reasonable care, skill, and diligence that are commonly exercised by other attorneys in similar conditions and circumstances, and to act in Plaintiff's highest and best interests at all times, and to not expose Plaintiff to any unnecessary risk or peril." ECF 1 at ¶ 64.  This conclusory, formulaic recitation and threadbare recital of a necessary element for a legal malpractice claim cannot suffice to state a plausible claim.  *See Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678.  Plaintiff recites, *verbatim*, its formulaic recitation of the alleged duties owed by Offit Kurman, prefaced with the legal conclusion that Offit Kurman "committed legal malpractice by failing to" perform those alleged duties. ECF 1 at ¶ 65. Plaintiff continues by repeatedly reciting conclusory unsupported legal conclusions couched as fact devoid of any factual support, alleging that "[Offit Kurman] committed legal malpractice by" (1) "failing to understand and apply the law correctly to Plaintiff's facts and circumstances" (¶ 66); (2) "making false statements of material fact to Plaintiff" (¶ 67); (3) "inducing Plaintiff to execute the Credit Agreement and Mortgage" (¶ 68); (4) "failing to properly counsel and advise Plaintiff in order to limit the litigation in Plaintiff's various legal actions, and by generally mishandling and mismanaging the Plaintiff's legal actions" (¶ 69); (5) "Defendant's acts and omissions in connection with the Credit Agreement and Mortgage" (¶ 70); (6) "failing to take all necessary actions, including without limitation,

26

filing all necessary and appropriate motions and other pleadings" (¶ 71); and (7) "filing frivolous pleadings in Plaintiff's various legal actions" (¶ 72).  Plaintiff further alleges "numerous other" non-specified instances where Offit Kurman's conduct "fell below the applicable standard of care," "failed to exercise reasonable care and skill," and "generally mishandling, mismanaging" Plaintiff's legal matters. ECF 1, ¶ 73.

Plaintiff continues the campaign of exclusive reliance on formulaic recitations and unsupported conclusory charges by alleging "[h]ad [Offit Kurman] not been negligent or otherwise acted wrongfully, the outcome of the Plaintiff's legal cases would have been materially different and Plaintiff would not have suffered the damages, financial losses and harm which the Plaintiff suffered." *Id.* at ¶ 74.  Plaintiff's final baseless legal conclusion is that Offit Kurman's conduct "in doing the acts and omissions herein alleged, constitutes legal malpractice, and was the proximate and foreseeable cause of the damages, financial losses, and harm which the Plaintiff has suffered and will continue to suffer in the foreseeable future." *Id.*  at ¶ 75.

Insofar as the Complaint is devoid of any factual allegations to support the baseless legal conclusions and formulaic recitations of elements of legal malpractice, Count VI must be dismissed for failure to state a claim. *See e.g., Berringer*, 133 Md. App. at 473; *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989) (court does not accept unsupported legal allegations);  *Papasan,* 478 U.S. at 286 (legal conclusions couched as factual allegations); *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) (conclusory factual allegations devoid of any reference to actual events); *Weller v. Dept of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (liberal construction for *pro se* litigants does not mean the court can ignore a clear failure to allege facts that set forth a cognizable claim).

Additionally, Plaintiff is fundamentally incapable of establishing that, but for the alleged malpractice of Offit Kurman, she would have prevailed on *any* of her claims or defenses. On the contrary, matters properly subject to judicial review demonstrate that Plaintiff's claims and defenses lacked any substantial likelihood of success from their inception, thus defeating any potential malpractice claim against Offit Kurman.  As discussed, *supra*, with the exception of the Seaside Case, prior to Offit Kurman undertaking the representation of Plaintiff in each of the matters, Plaintiff had been represented by numerous other attorneys and law firms, who *unanimously* sought to withdraw from and terminate their representation of Plaintiff for, *inter alia,* nonpayment and irreconcilable differences making the continued representation of Plaintiff impossible. In reality, Offit Kurman was retained primarily to try and mitigate the damages caused by the conduct and futile litigation tactics of Plaintiff and her prior counsel in the various proceedings, largely resulting from Plaintiff's unwavering determination to pursue fundamentally flawed claims and defenses that were unlikely to be prevailing from the outset, as part of an effort to frustrate any attempts by creditors to pursue claims against Plaintiff.

Despite Plaintiff's bald allegations, the record actually clearly demonstrates that Offit Kurman successfully negotiated a settlement agreement with Regions Bank to resolve two of the four matters, the Lot 6 and Regions Cases. *See* **Exhibits 2-D and 3-F**. Similarly, the unnecessary and ill-advised conduct in the Seaside Case and any "damages" suffered therein took place after Offit Kurman was finally successful withdrawing its representation in the case, and clearly Offit Kurman cannot be the proximate cause thereof.  Offit Kurman was also brought into the Naples Case after more than four years of litigation by Plaintiff's prior counsel, of whom there were many, fighting against a foreclosure action to which there was little genuine hope to successfully defend against. Nonetheless, even after the Court clearly rejected every effort to avoid the

foreclosure, after Offit Kurman's withdrawal and termination of representation, Plaintiff and Myers pursued a blatant campaign of frivolous, vexatious and dilatory litigation tactics, and as a result, have succeeded in delaying and obstructing a final and conclusive judgment on the foreclosure for another five years after Offit Kurman ceased its involvement.

The record reflects that Courts across numerous jurisdictions consistently ruled against Plaintiff, due to the fact that the claims and defenses Plaintiff has shown a blind and unwavering conviction to pursue regardless of the cost, were flawed and unpersuasive to any of the Courts. Nevertheless, Offit Kurman universally upheld its obligations to its client and diligently and zealously advocated on Plaintiff's behalf and at her direction, until Plaintiff's conduct made it such that continued representation was no longer possible for a variety of reasons, including non-payment, breach of the Agreement by Plaintiff, and irreconcilable differences thereby *requiring* Offit Kurman to discontinue its representation.

In summary, Plaintiff's legal malpractice claim must be dismissed because it is based solely on unsupported conclusory allegations with no factual support whatsoever. Additionally, the claim must be dismissed because under no circumstances can Plaintiff rationally demonstrate that any malpractice by Offit Kurman was the proximate cause of any alleged damages or injuries sustained by Plaintiff. Finally, the record and matters subject to proper judicial review directly contradict the allegations advanced by Plaintiff, and therefore, it is clear that Plaintiff is incapable of stating any plausible claim against Offit Kurman for legal malpractice.

## VII.   Count VII – IIED

Plaintiff's final claim for intentional infliction of emotional distress also must be dismissed as the allegations come nowhere close to the level of conduct necessary to support an IIED claim. The basis of Plaintiff's IIED claim is that Offit Kurman's September 24, 2015 letter

notifying Plaintiff that she had breached the Agreement and advising Plaintiff that Offit Kurman intended to discontinue its provision of legal services caused "Plaintiff to experience severe emotional distress and mental pain and suffering." (ECF 1, ¶¶ 77-78). Plaintiff claims that Offit Kurman's decision to discontinue providing legal representation was unlawful and malicious (ECF 1, ¶ 78), that the infliction of severe emotional distress and mental pain and suffering was intentional, deliberate and reckless (*Id.* at ¶ 79), motivated by the potential for unreasonable financial gain and constitutes unclean hands (*Id.* at ¶ 80).   Plaintiff alleges that physical symptoms accompanied her emotional distress, which manifested in a variety of ways, which Plaintiff alleges still continue, apparently due to Offit Kurman's "material breach of the Credit Agreement" which Plaintiff alleges is the proximate cause of her being "materially harmed" and caused "to incur various damages, costs and expenses associated with Plaintiff being forced to deal with the improper and unlawful actions of Defendant." *See* ECF 1, ¶¶ 81-84.

While Maryland recognizes intentional infliction of emotional distress as a cause of action, this tort "is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Respess*, 770 F. Supp. 2d at 757 (*quoting Snyder v. Phelps,* 580 F.3d 206, 231 (4th Cir. 2009)). The Maryland Court of Appeals further stated with respect to IIED, "whatever the relationship between the parties, recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Batson v. Shiflett*, 325 Md. 684, 734 (1992) (*internal citations omitted*).   To establish a claim for IIED, Plaintiff must demonstrate that Offit Kurman's conduct was: (1) intentional or reckless; (2) extreme and outrageous; (3) causally connected to Plaintiff's emotional distress; and (4) the emotional distress must be severe. *See, e.g., Id.; Respass*, 770 F.Supp.2d at 757. Each element of an IIED claim must be pled and proved with specificity, it is

not enough for a plaintiff to merely allege that they exist; he must set forth fats that, if true, would suffice to demonstrate that they exist. *Respass*, 770 F.Supp.2d at 757-58 (*citing Crouch v. City of Hyatsville*, 2010 U.S. Dist. LEXIS 97166, at *22 (D. Md. 2010)).   The failure to allege or prove any one of the elements of IIED is fatal. *Abrams v. Rockville,* 88 Md. App. 588, 598 (1991).

As a preliminary matter, Plaintiff's repeated assertions that she suffered "severe emotional distress and mental pain and suffering," "with accompanying physical symptoms" or "physical manifestations" is simply a boilerplate recitation and legal conclusion couched as fact, which cannot support a claim. *See Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, Civil No. 8:18-cv-03460-PX, 2020 U.S. Dist. LEXIS 25577, at *25 n.8 (D. Md. Feb. 13, 2020) (addressing identical boilerplate allegations by a former client against law firm) (*citing Twombly*, 550 U.S. at 555). "Allegations of physical pain, emotional suffering and great mental anguish are insufficient to establish a claim for IIED." *Braun v. Maynard*, Civil No. 1:09-cv-1897, 2010 U.S. Dist. LEXIS 32160, at *21, 2010 WL 1375172 (D. Md. Mar. 31, 2010) (allegations of severe emotional distress, shame, humiliation, degradation, fear, loss of sleep, loss of appetite, loss of familial relationships all insufficient to support IIED) (*quoting Leese v. Baltimore County*, 64 Md. App. 442 (1985)). Plaintiff's allegations come nowhere close to those necessary to sustain a claim for IIED, which have been denied almost unanimously in cases despite truly repugnant and reprehensible behavior, and upheld in only three cases, involving (1) a psychiatrist having sexual relations with a client for whom he was performing marriage counseling, (2) a doctor knowingly infecting one of his nurses with an incurable sexually transmitted disease, and (3) an insurer requiring a claimant to undergo multiple psychiatric examinations for the *sole purpose* of causing the claimant to abandon her claim or commit

suicide. *Miller v. Ratner*, 114 Md. App. 18, 58 (1997) (*citations omitted*); *Batson*, 325 Md. at 735 (same).

Moreover, it is clear that Plaintiff is incapable of sufficiently alleging or proving either of the first two elements of IIED, and the claim must be dismissed. "[T]he defendant's conduct is intentional or reckless where he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Harris v. Jones*, 281 Md. 560, 566 (1977). Plaintiff's IIED relies on conclusory allegations that Offit Kurman's decision to terminate the Agreement and the provision of legal services was unjustified, unlawful, and malicious, and that Offit Kurman was motivated by the potential unreasonable financial gain.  Plaintiff's offers no *factual* support for these illogical conclusions, and by alleging that the motivation for financial gain rather than a desire and intention to inflict severe emotional distress on Plaintiff, she has demonstrated the fatal defects in her frivolous claim and negated the first element of IIED.

To satisfy the "extreme and outrageous" prong, the conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 561 (*quoting* Restatement (Second) of Torts § 46, comment d (1965)). "To be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Farasat v. Paulikas*, 32 F.Supp.2d 244, 248 (D. Md. 1997) (*quoting Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60 (1986)). Plaintiff attempt to convert a contrived breach of contract claim into the extreme tort of inflectional infliction of emotional distress is futile. Even if Offit Kurman did not have the demonstrative legal right to terminate the Agreement and

discontinue the provision of legal services, and even if Offit Kurman did so unjustifiably and maliciously as Plaintiff claims, such conduct is fundamentally incapable of rising to the requisite level of "extreme and outrageous" conduct necessary to support an IIED claim. Accordingly, Count VII of the Complaint must be dismissed with prejudice and without leave to amend.

<u>**CONCLUSION**</u>

Based upon the foregoing reasons, and the matters of record or subject to proper judicial notice, it is clear that Plaintiff has failed to state any plausible claim upon which relief can be granted, and Offit Kurman respectfully requests that this Honorable Court dismiss the Complaint in its entirety, with prejudice and without leave to amend, and for any other relief that the Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/ James E. Dickerman*
James E. Dickerman (10687)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: dickerman@ewmd.com
*Attorney for  Defendant*

33

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 3, 2020 copies the foregoing MEMORANDUM OF LAW IN SUPPORT OF OFFIT KURMAN'S MOTION TO DISMISS were served by first-class mail, postage prepaid to:

Barbara Ann Kelly
700 Gulf Shore Blvd. North
Naples, Florida 34102
*Pro se Plaintiff*

*/s/ James E. Dickerman*
James E. Dickerman (10687)