UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| **BARBARA ANN KELLY,** | |
| Plaintiff | |
| v. | **Case No.  1:17-cv-03668-CCB** |
| **OFFIT KURMAN, P.A.,** | |
| Defendant | |

## OFFIT KURMAN, P.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISQUALIFICATION OF COUNSEL

Defendant Offit Kurman, P.A. ("Offit Kurman"), by and through its attorneys, James E. Dickerman and Eccleston & Wolf, P.C., hereby files this Opposition to Plaintiff's Motion for Disqualification of Offit Kurman's counsel (Plaintiff's "Motion to Disqualify"), and in support thereof, states as follows:

## INTRODUCTION

On October 6, 2020, the date Plaintiff's response to Offit Kurman's Motion to Dismiss the Complaint was originally due, Plaintiff filed her thirteen-page Motion to Disqualify demanding that Offit Kurman's counsel be disqualified from continuing its representation on the basis of alleged conflicts of interest.[1]  Plaintiff alleges that James E. Dickerman and Eccleston & Wolf,

---

[1] At 3:34 p.m. on October 5, 2020, the day before Plaintiff's response to Offit Kurman's Motion to Dismiss was due, Plaintiff emailed Offit Kurman's counsel to request a 28-day extension of time to respond to the Motion to Dismiss under the pretext that Plaintiff "was required to travel to NC over the weekend for a family issue."  In the interest of cooperation, Plaintiff was granted a fourteen-day extension. Plaintiff intentionally concealed the fact that she had utilized the time to prepare a Motion to Disqualify instead of a response to the pending Motion to Dismiss.

P.C. are prohibited from representing Offit Kurman in this case due to an alleged conflict of interest involving Robert Gittins, an attorney who joined Eccleston & Wolf in December 2019.  Plaintiff relies on false statements in an attempt to manufacture support for her Motion to Disqualify, which is purely strategic and coincides with the pattern of dilatory and abusive litigation tactics demonstrated by the Plaintiff throughout her extensive and contentious litigation history, often proceeding *pro se* in an attempt to exploit the judiciary's tendency to grant unrepresented parties increased leniency and tolerance for violations of the FRCP.

As discussed below, Plaintiff has failed to satisfy her burden of establishing that there was ever an attorney-client relationship between Plaintiff and Mr. Gittins or that any potential conflict of interest actually exists.  Furthermore, even if Plaintiff's unsupported allegations sufficed to establish the necessary attorney-client relationship and a potential conflict of interest, the Plaintiff, nonetheless, cannot demonstrate that the alleged conflict of interest involving Mr. Gittins warrants the "drastic remedy" of disqualification and precludes Mr. Dickerman and Eccleston & Wolf from continuing to represent Offit Kurman in this lawsuit, as Mr. Gittins has been screened from the representation. Accordingly, there is no basis to disqualify Offit Kurman's chosen counsel, and Plaintiff's Motion should be denied.

## STANDARD OF REVIEW

"Motions for disqualification of counsel are disfavored and are 'permitted only where the conflict is such as clearly to call into question the fair and efficient administration of justice.'" *Dorsey v. Sokoloff*, 381 F. Supp. 3d 521, 527 (D. Md. 2019) (*quoting Gross v. SES Americom, Inc.,* 307 F. Supp. 2d 719, 723 (D. Md. 2004)). "The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d

142, 146 (4th Cir. 1992); *Harris v. Keystone Ins. Co.,* No. CCB-13-2839, 2013 U.S. Dist. LEXIS 167942, at *8 (D. Md. Nov. 26, 2013) ("The court must be mindful of the possibility that a disqualification motion may be abused for tactical purposes."); *Gross*, 307 F. Supp. 2d at 722-23 ("The Maryland Rules of Professional Conduct expressly caution that motions to disqualify should be viewed with caution for they can be misused as a technique of harassment") (*internal formatting removed*). Despite the strong policy rationale, the rule prohibiting representation of a new client against a former client is not a *per se* or absolute rule and, "[i]nstead, a court should undertake a 'painstaking analysis of the facts' and evaluate applicable precedent before disqualifying counsel." *Gaumer v. McDaniel*, 811 F.Supp. 1113, 1117 (D. Md. 1991) (*citing Satellite Fin. Planning v. 1st Nat. Bk. Wilmington*, 652 F.Supp. 1281, 1282-83 (D. Del. 1987)).

In deciding whether disqualification is proper, the Court must undertake a two-part inquiry and "must find that the moving party has established, first, 'that an attorney-client relationship existed with the former client, and second, that the matter at issue in the former representation was the same or substantially related to that in the current action.'" *Pennsylvania Nat'l*, 819 F.Supp.2d at 453 (*quoting Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 610 (D. Md. 2002)); *see also Gross*, 307 F. Supp. 2d at 723. A motion seeking to disqualify opposing counsel should only be granted when there is an "actual or likely" conflict of interest and not merely a theoretical one. *See Sitel Corp. v. Stonebridge Life Ins. Co.,* No. CCB-06-3457, 2007 U.S. Dist. LEXIS 106529, at *4 (D. Md. July 23, 2007) (*citation omitted*); *see also Tessier v. Plastic Surgery Specialists, Inc.,* 731 F. Supp. 724, 729 (E.D. Va. 1990) ("The disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict.").

The party seeking disqualification "must have evidence to buttress his claim of conflict," and the Court must approach disqualification motions with "cautious scrutiny" because they have

increasingly been used as a "weapon in the litigation arsenal." *Satellite Fin. Planning*, 652 F.Supp. at 1283; *see also Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 27 (D.D.C. 1984) ("the mere claim of a conflict is not enough; there must be proof."). Because disqualification necessarily results in the drastic consequences of a party losing its freely-chosen counsel, the movant "bear[s] a high standard of proof to show that disqualification is warranted.'" *Franklin v. Clark*, 454 F.Supp.2d 356, 364 (D. Md. 2006) (*quoting Buckley v. Airshield Corp.,* 908 F. Supp. 299, 304 (D. Md. 1995)); *see also Sitel,* 2007 U.S. Dist. LEXIS 106529, at *4 ("The moving party bears a high standard of proof to show that disqualification is warranted"); *Aetna Cas. & Surety Co. v. United States*, 570 F.2d 1197, 1200-01 (4th Cir. 1978).

The movant must satisfy this heightened burden of proof as to all facts necessary to establish the existence of the attorney-client relationship and to demonstrate that the rules of professional conduct require disqualification. *See Fenzel v. Group2 Software, LLC,* No. DKC-13-0379, 2014 U.S. Dist. LEXIS 177549, *5-7, 2014 WL 7404575 (D. Md. 2014) (*citing Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 819 F.Supp.2d 449, 454-55 (D. Md. 2011) (denying motion for disqualification under Rule 1.9, finding that the movant "has not satisfied the high burden of proof necessary to sustain a disqualification motion in showing it stood in an attorney-client relationship" with opposing counsel)); *Victors v. Kronmiller*, 553 F.Supp.2d 533, 552-53 (D. Md. 2008) (failure to conclusively establish a conflict under Rule 1.9).

## ARGUMENT

Plaintiff has failed to meet her "high standard of proof" concerning *any* of the conditions that are required to even consider disqualification. Specifically, Plaintiff has not produced any evidence or proof to establish either the existence of a previous attorney-client relationship or that the matter at issue in the former representation was the same or substantially related to that in the

current action. Moreover, even if Plaintiff could produce sufficient proof of a prior attorney-client relationship with Mr. Gittins *and* that the prior representation was the same or substantially related to the current litigation, which she cannot, Plaintiff is incapable of establishing that any alleged conflict with respect to Mr. Gittins can be imputed to Offit Kurman's present counsel.  Instead, the circumstances demonstrate that Plaintiff's untimely Motion was filed in bad faith, solely for tactical and strategic purposes.

Accordingly, the Court should deny the Plaintiff's Motion to Disqualify, in addition to granting any further relief that the Court believes is appropriate to prevent further abusive and improper litigation tactics by the Plaintiff in this case.

I.     **Plaintiff fails to establish the existence of any attorney-client relationship.**

The Maryland Court of Appeals has held that "an attorney-client relationship is said to have been created when (1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Atty. Griev. Comm'n v. Brooke*, 374 Md. 155, 172-74 (2003) (*string citation omitted*).

Despite making the unequivocal claim that Mr. Gittins  "has previously represented both Gregory B. Myers ("Myers"), [Plaintiff's] husband, and [Plaintiff] in a multitude of matters during the time period 2012-2016 [sic]," and painting a picture of a longstanding and extensive attorney-client relationship between Plaintiff and Mr. Gittins, Plaintiff failed to produce any documentary evidence to support her claim that an attorney-client relationship ever existed between Plaintiff and Mr. Gittins, while Mr. Gittins unequivocally denies that he ever represented Plaintiff in any capacity. *See* **Exhibit 1**. Instead, Plaintiff quotes an August 28, 2015 email from Offit Kurman to Mr. Gittins and proffers that the email demonstrates the alleged attorney-client relationship with

Mr. Gittins, yet she refuses to provide the Court with the email.  However, the full email clearly contradicts Plaintiff's claims, and demonstrates that there was **not** an attorney-client relationship between Mr. Gittins and Plaintiff:

| | |
|---|---|
| **From:** | VerStandig, Mac <mverstandig@offitkurman.com> |
| **Sent:** | Friday, August 28, 2015 3:17 PM |
| **To:** | rob@hickeylegal.com |
| **Cc:** | Lynch, Timothy |
| **Subject:** | Gregory Myers |
| | |
| **Importance:** | High |

Rob,

To follow on our call from this morning, I understand that you now represent Gregory Myers in connection with the pending foreclosure proceeding concerning the home at 4505 Wetherill Road, in Bethesda, Maryland.

As you know, Timothy Lynch and I represent Mr. Myers in several other proceedings, and we also represent his wife – Barbara Ann Kelly – in various other proceedings. Mr. Myers is often the party who Ms. Kelly nominates to interact with her counsel.

In light of the foregoing, and per our discussion, please let me know if you can permit Mr. Lynch and myself to communicate directly with Mr. Myers pursuant to Maryland Rule of Professional Conduct 4.2(a). Inasmuch as you could not offer such permission when we spoke, I am forbearing from speaking with Mr. Myers as-of-present, but have received at least one e-mail from him, and would imagine he will become frustrated if Mr. Lynch and myself are non-communicative and non-responsive over the weekend.

Regards,

Maurice "Mac" VerStandig, Esq.
*Attorney*

**Offit│Kurman®**
Attorneys At Law

*See* **Exhibit 2**.[2]  It would be illogical for Offit Kurman to need to explain who Plaintiff was if Mr. Gittins *actually* represented her in the "Wetherill Road" matter, in addition to a "multitude" of other matters for several years.  Instead, the portion of the email that Plaintiff concealed from the Court reveals that Mr. Gittins clearly represented Myers *only,* and *did not* represent Plaintiff.[3]

---

[2] Plaintiff's effort to mislead the Court by selectively quoting the above email gives rise to the inference that Plaintiff's purported concern over waiving attorney-client privilege and uncertainty how to provide the Court with evidence demonstrating an attorney-client relationship is pretextual.

[3] Throughout her Motion, Plaintiff repeatedly interjects arguments and issues pertaining to Myers, and even declares that Myers possesses unspecified "adverse claims against Offit Kurman arising after February 22, 2017, and accordingly, Myers will be added as a party plaintiff in this action." Myers is not a party to this lawsuit, was not a party to the Credit Agreement giving rise to this lawsuit and all of Plaintiff's claims against Offit Kurman, and Plaintiff fails to identify what claims Myers allegedly has, or the basis upon which Myers can join as a party or assert claims against

Mr. Gittins entered his appearance in the Wetherill Road foreclosure matter on August 31, 2015 on behalf of Gregory B. Myers **only**. *See* **Exhibit 3**. Moreover, Mr. Gittins's representation of Myers therein was exceedingly limited. The day after entering his appearance, Mr. Gittins hand-filed an emergency motion on behalf of Myers seeking a continuance of the hearing to adjudicate a pending Verified Motion to Stay Sale of Property and Dismiss Foreclosure Proceeding scheduled for Friday, September 4, 2015. *See* **Exhibit 4**. After the emergency motion filed on September 1, 2015 was denied by the Court, meaning the hearing would proceed as scheduled, Myers terminated Mr. Gittins's representation, resulting in Mr. Gittins withdrawing his appearance just one day after it was entered, and had no further involvement in the case. *See* **Exhibit 5**. Plaintiff's accusation that "[b]eginning in September 2014, Mr. Gittins – together with Offit Kurman – provided legal advice to Kelly and Myers with respect to" the Wetherill Road foreclosure matter is disproven by the indisputable evidence of record. *Compare* Pl.'s Motion at 11 *with* **Exhibits 3-5**. The relevant public court filings eliminate any doubt that Plaintiff's assertion that Mr. Gittins represented her in the Wetherill Road matter is patently false.

Plaintiff also claims that Mr. Gittins represented Plaintiff: (1) with respect to the Credit Agreement and that he "drafted, reviewed, edited, and facilitated the Credit Agreement (Exhibit A to the Complaint) and Mortgage (Exhibit B to the Complaint);" (2) with respect to "'Lot 13 in

---

Offit Kurman. Accordingly, it is impermissible for the Court to consider Plaintiff's improper arguments, allegations and inferences regarding Myers and the alleged conflict based upon Mr. Gittins's prior representation of Myers, who is not a party and cannot be a proper party as he was not a party to the underlying Credit Agreement or representation of Plaintiff by Offit Kurman. Moreover, despite Plaintiff's broad, generalized conclusory allegations, Mr. Gittins represented Myers only in a limited capacity in various matters, none of which create a conflict as they are unrelated to the matters at issue in this lawsuit.  It is obvious that Plaintiff intends to add Myers as a party plaintiff in an effort to gain a tactical advantage, to create a basis for a renewed disqualification motion, to cause further delay, and for the purpose of harassing and prejudicing Offit Kurman.

Seaside' – the very property which underpins the 'Seaside Litigation'" and (3) "in numerous other substantially related matters." (Pl's Motion at 10).  Other than the August 2015 email, the only "evidence" that Plaintiff offers to show the existence of an attorney-client relationship comes in the form of similar unsubstantiated accusations made by Plaintiff and her prior counsel to Offit Kurman's counsel regurgitating the same bald allegations contained in her instant Motion, which have no evidentiary value.[4] Conversely, Mr. Gittins, a respected and longstanding member of the Bar, is adamant that he never represented Plaintiff in any capacity, has never met or even spoken to Plaintiff, and a thorough search of his files and records conducted by Mr. Gittins revealed that he has no files, records, communications, confidential information or knowledge relating to the Credit Agreement or relevant to any of the claims or issues involved in this litigation, and he submits a sworn affidavit under penalty of perjury attesting to these facts. *See* **Exhibit 1**.

On the two prior occasions that Plaintiff's prior counsel and/or Plaintiff asserted that Mr. Gittins previously represented Plaintiff and had a conflict, Offit Kurman's counsel responded by indicating that Mr. Gittins was unmistakably clear that he had never represented Plaintiff in any capacity and possessed no confidential communications or information with Plaintiff in any way related to the Credit Agreement or any other issues or matters involved in the litigation, and further requested that Plaintiff and/or her attorney provide any documentation that they had indicating any information to the contrary or that a potential conflict existed.  On both occasions, no response

---

[4] Prior unsupported out-of-court statements made by Plaintiff and her prior counsel to Offit Kurman's counsel are being offered as evidence to prove the truth of the matters being asserted and thus constitute inadmissible hearsay which cannot form a basis for disqualification. *See*, Fed. R. Evid. 801, *et seq*.; *Allstate Ins. Co. v. A & F Med. P.C.*, No. 14-CV-6756 (JBW), 2017 U.S. Dist. LEXIS 82102, at *13-14 (E.D.N.Y. May 30, 2017) (denying motion to disqualify opposing counsel relying on hearsay contained in an affidavit); *City of Waukegan v. Martinovich*, No. 03 C 3984, 2005 U.S. Dist. LEXIS 34528, at *10 n.2 (N.D. Ill. Dec. 16, 2005) (refusing to consider affidavits in support of a motion to disqualify containing "extensive hearsay, legal conclusions, irrelevant factual assertions, and other inadmissible material.").

was received from Plaintiff or her prior counsel, and no documentation or other information evidencing that an actual conflict existed was ever provided. Similarly, Plaintiff's Motion is equally devoid of supporting documentation that could permit even an *inference* of a conflict.

Although Mr. Gittins previously represented Myers, Plaintiff's husband, in a very limited capacity on a few occasions, the attorney-client relationship between Mr. Gittins and Myers cannot be extended by virtue of the marital relationship between Plaintiff and Myers to spontaneously create an attorney-client relationship between Plaintiff and Mr. Gittins where none otherwise existed. Myers is not a party to this lawsuit and there is no basis for Plaintiff to attempt to exploit a prior relationship between a non-party and Mr. Gittins, who is likewise entirely uninvolved in this litigation, to pursue a tactical motion improperly seeking to disqualify Offit Kurman's counsel.

In apparent recognition of the futility of depending on the false allegation that an *actual* attorney-client relationship with Mr. Gittins ever existed, Plaintiff alleges, inconsistently, that instead she "had the reasonable expectation" that she possessed an attorney-client relationship with Mr. Gittins, "or that, at a minimum, an attorney-client relationship would result with Mr. Gittins, and this reasonable belief gave rise to Mr. Gittins' implied representation of Kelly." (Pl's Motion at 8). Plaintiff urges the Court to infer the existence of an attorney-client relationship based upon the contention that "Mr. Gittins never manifested a lack of consent to represent [Plaintiff]." *Id.* at 8-9. Attorneys do not represent every individual they have never met or spoken to simply by virtue of not "manifesting a lack of consent" to represent them. These arguments must be disregarded.

## II.     Plaintiff fails to satisfy her burden of proving the existence of an actual conflict.

Even if Plaintiff could establish the existence of an attorney-client relationship with an attorney she has never met or even communicated with, disqualification would still be inappropriate because Plaintiff has failed to present facts sufficient to establish that the case *sub*

*judice* is "the same or substantially related" to the alleged prior representation of Plaintiff by Mr. Gittins. *See Dorsey v. Sokoloff*, 381 F. Supp. 3d 521, 527-28 (D. Md. 2019).

In ruling on a motion to disqualify counsel, Courts resolve issues involving alleged conflicts with former clients through the application of the "substantial relationship" test. *See Gatewood v. State*, 158 Md. App. 458, 468 (2004); *Gaumer*, 811 F. Supp. at 1117. The substantial relationship test requires that the matter at issue in the present representation is "the same or substantially related" to the matter at issue in the previous representation. *Dorsey*, 381 F. Supp. 3d at 527 (*citing Victors v. Kronmiller*, 553 F. Supp. 2d 533, 551-52 (D. Md. 2008)). "Matters are 'substantially related' for purposes of [MARPC Rule 1.9] if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Maryland Rule 19-301.9, cmt. 3; *see also Dorsey*, 381 F.Supp.3d at 527. "'Substantially related' has been interpreted to mean 'identical' or 'essentially the same,' or 'factually related.'" *Pennsylvania Nat'l*, 819 F.Supp.2d at 455 (*quoting Nichols Agency, Inc. v. Enchanted Child Care, Inc*., 537 F. Supp. 2d 774, 779 (D. Md. 2008)).

The focus of the substantial relationship test is on "the factual nexus between the earlier representation and the present, adverse representation." *Blumenthal Power Co. v. Browning-Ferris, Inc.*, 903 F. Supp. 901, 902 (D. Md. 1995) (*citing Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980)).  The Court's primary concern is whether there is a reasonable probability that confidences were actually disclosed by the former client to the attorney in the prior representation that are substantially related to the instant lawsuit, and if so, whether such confidential communications could likely be used against the former client in the current litigation to the former client's direct detriment. *See Gaumer,* 811 F.Supp. at 1118; *Pennsylvania Nat'l*, 819 F.Supp.2d at

455; *Stratagene*, 225 F. Supp. at 611; *Satellite Fin. Planning,* 652 F.Supp. at 1283 (noting that the Court "should undertake a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other"). If the present action lacks the necessary "substantial relationship" with the alleged prior representation, disqualification is not appropriate. *See Pennsylvania Nat'l*, 819 F.Supp.2d at 455.  The burden of proving that there is a substantial relationship falls upon the moving party. *Gaumer*, 811 F.Supp. at 1118 (*citing Satellite Fin. Planning,* 652 F.Supp. at 1283 ("Only if the moving party *proves* the requisite substantial relationship should a lawyer be disqualified.")).

Plaintiff fails to meet her burden of proving that there is a substantial relationship between the *alleged* prior representation and the instant litigation, and her Motion for Disqualification should be denied. It is important to remain cognizant of the fundamental issues involved in the present litigation.  Plaintiff's Complaint asserts various causes of action against Offit Kurman, Plaintiff's *actual* prior counsel, for alleged improprieties and wrongdoing that Plaintiff claims to have taken place during the course of Offit Kurman's representation of Plaintiff in four ongoing lawsuits in Florida's state, federal and appellate courts, pursuant to the Credit Agreement executed in December 2013. The fundamental basis of Plaintiff's claims against Offit Kurman can be distilled to a simple concept: Plaintiff's contention that Offit Kurman prematurely terminated its representation of Plaintiff in violation of the Credit Agreement. As is more fully set forth in the pending Motion to Dismiss, Offit Kurman had the legal right to terminate Plaintiff's representation, and Plaintiff's Complaint was filed in retaliation for Offit Kurman lawfully terminating the attorney-client relationship, alleging that the withdrawal violated the Credit Agreement, that Offit Kurman committed legal malpractice, intentionally inflicted emotional

11

distress on Plaintiff by terminating its representation, breached its fiduciary duties, and that Offit Kurman violated the Truth-in-Lending Act and Fair Debt Collection Practices Act.

All of these issues in this case concern Offit Kurman's representation of Plaintiff in the four Florida cases and alleged violation of the Credit Agreement, not from any alleged representation of Plaintiff by Mr. Gittins. Mr. Gittins has never been employed by or associated with Offit Kurman, nor does Plaintiff make any such allegations. Accordingly, Mr. Gittins could not possibly have any damaging confidential information about the relationship between Plaintiff and Offit Kurman, or regarding Offit Kurman's representation of Plaintiff that Offit Kurman lacks, and because Offit Kurman can lawfully disclose any confidential information or communications in its own defense, there is no basis for asserting a conflict.  *See* Md. Rule 19-301.6(b); Model Rules of Professional Conduct 1.6(b).

Plaintiff cannot and does not prove a substantial relationship exists between the alleged prior representation and the instant litigation, supported by specific facts and evidence rather than bald, generalized conclusory allegations.  Plaintiff's argument that the instant litigation constitutes the "very same transaction" as Plaintiff's 2013 decision to enter into the Credit Agreement with Offit Kurman is misguided and, regardless, Mr. Gittins did not represent Plaintiff in any capacity concerning the Credit Agreement. *See* Pl.'s Motion at 10; *see also* **Exhibit 1**.  He also did not represent her with respect to "Seaside Litigation," as the indisputable evidence shows that Offit Kurman represented Plaintiff, not Mr. Gittins. *Id.*; *see also* **ECF 25-20** (Docket for "Seaside Litigation," omitting Mr. Gittins from list of Plaintiff's prior counsel). Even if Mr. Gittins did, it is inconceivable how he could possibly possess confidential information regarding the Seaside Litigation that could be used against Plaintiff to her detriment that Offit Kurman would not also possess.

12

Moreover, Plaintiff fails to establish that any representation with respect to Lot 13 Seaside was substantially related, as opposed to entirely unrelated, such as in the context of providing a title examination, advice regarding a boundary or zoning dispute, advice regarding a dispute with a home improvement contractor, or drafting an estate plan involving the property, none of which would satisfy the "substantial relationship" test. *See, e.g. Nichols*, 537 F.Supp.2d at 781-82 (denying motion for disqualification despite the prior representation involving the attorney revising the contract that was at issue in the litigation because the evidence did not show that the attorney drafted the specific term at issue, there was no indication that the attorney had unfettered access to the former client's files and there was no significant risk that the attorney possessed confidential information that could be used against the former client, also holding that generalized allegations that the former client divulged "strategy with regard to litigation or settlement," without "any suggestion of what such a strategy might entail, or how discussion of that strategy is relevant" to the subsequent case specifically, "is not sufficient to disqualify opposing counsel").

Even assuming that Plaintiff's false allegation that Mr. Gittins represented her in the Wetherill Road foreclosure matter was true, that matter was not part of the Credit Agreement and is unrelated to the instant dispute. There is no "fruit of the poisonous tree doctrine" applicable to disqualification, automatically imputing conflicts between unrelated firms as Plaintiff alleges. Also, the inference that alleged co-representation by Offit Kurman and Mr. Gittins in a legal matter unrelated to the instant dispute automatically creates a disqualifying conflict runs contrary to the controlling "substantial relationship" test requiring, as a condition precedent, that the prior and current representation be the same or substantially related.

The remaining attempts by Plaintiff to show that Mr. Gittins's representation is substantially related are nothing more than sweeping, non-specific conclusory charges. Plaintiff

argues that disqualification is necessary based on "[t]he duration, breadth, and depth of Mr. Gittins's representation of Myers and Kelly on numerous, substantially related matters from 2012 – 2016;" and that Mr. Gittins was "provided with access to detailed knowledge of extensive, private personal and financial information which information is privileged and not generally known – information that already has been used and/or will be used to the advantage of Offit Kurman and to the detriment of Kelly and Myers in this litigation." (Pl's Motion at 9-10). These vague and generalized assertions do not satisfy Plaintiff's burden of proof and are insufficient to warrant the drastic remedy of disqualification as a matter of law, considering they are not made in an affidavit and have no evidentiary value and, regardless, Plaintiff fails to demonstrate that any confidential information obtained by Mr. Gittins could be used to the material detriment of Plaintiff in the instant case. *See, e.g. Nichols*, *supra*, 537 F.Supp.2d at 781-82; *Blumenthal,* 903 F.Supp. at 902-03 (denying motion to disqualify rejecting the argument that the Court "err on the side of disqualification" to avoid "even the appearance of improper conflict of interest by an attorney," holding that broad "generalized assertion[s]" of confidences in a sworn affidavit by the movant "falls far short of the required showing to make the issue of disqualification ... even a 'close call,'" let alone "to shift the burden of coming forward to rebut a presumption of disqualification")*; Stitz*, 650 F.Supp. at 917 (finding disqualification of one law firm representing the opposing party was not justified because that the movant's affidavit alleging that he met once for an hour and a half with an attorney at the opposing firm was insufficient to establish that confidences were disclosed that could be used to the movant's detriment); *Dorsey,* 381 F.Supp.3d at 529-30 (finding that disqualification was not warranted even though prior representation was related to similar matters, involving similar legal issues, despite the presumption that confidential information was received during the prior representation and was undoubtedly *related* to the claims at issue, finding that the

movant failed to demonstrate that the confidential information "could be used to the material detriment of the former client in the current proceeding," noting that the confidences were not dispositive of the controlling issues regarding liability and thus there was "no 'substantial risk' that the presumed confidential information... would 'materially advance'" the new client's claims against the former client); *Gaumer*, 811 F. Supp. at 1119 (failure to establish "likelihood that there was any confidential communication which bears any substantial relationship to the present lawsuit and/or which, even if it were disclosed... would cause any detriment").

The case law makes clear Plaintiff's inaccurate, vague, unsubstantiated, generalized allegations are insufficient to establish that the substantial relationship test has been satisfied as a matter of law. Accordingly, disqualification is inappropriate and Plaintiff's Motion should be dismissed with prejudice.

**III.      Any conflict that potentially exists as to Mr. Gittins cannot be imputed to disqualify Offit Kurman's counsel.**

Setting aside Plaintiffs failure to demonstrate both the existence of a prior attorney-client relationship and that any prior representation by Mr. Gittins is the same or substantially related to the matters currently at issue before the Court, even if Plaintiff had established a conflict, it would nonetheless not still not warrant the extreme remedy of disqualification.

Pursuant to MARPC Rule 1.10(c), "[w]hen an attorney becomes associated with a firm, no attorney associated in the firm shall knowingly represent a person in a matter in which the newly associated attorney is disqualified under Rule 19-301.9 (1.9) unless the personally disqualified attorney is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Md. Rule 19-301.10(c). It is undisputed that the alleged conflict concerning Mr. Gittins is based upon the allegation that Mr. Gittins represented Plaintiff from 2012 to 2016 while he was an attorney at the Law Offices of William J. Hickey and/or Hickey & Gittins, LLC, a

separate law firm in no way associated with Eccleston & Wolf or Mr. Dickerman that has since been closed. Mr. Gittins did not join Eccleston & Wolf until December 2019, three years after Plaintiff alleges the attorney-client relationship ended, and two years after Plaintiff filed the instant lawsuit. *See* Pl.'s Motion at 1 *and* **Exhibit 1**. Mr. Gittins has not represented Plaintiff, or Myers for that matter, since joining Eccleston & Wolf approximately ten months ago.

Disqualification is inappropriate because, despite Mr. Gittins not actually having a conflict and is not being personally disqualified under Rule 19-301.9 (1.9), out of an abundance of caution, Mr. Gittins has been timely screened from any participation in the representation of Offit Kurman and will receive no apportionment of fee or any remuneration from Eccleston & Wolf's representation of Offit Kurman in this case. *Id.; see also* Md. Rule 19-301.9, cmt. 7 (no prohibition on partnership share or salary if the attorney does not receive compensation directly related to the matter the attorney is disqualified from); *Compass Mktg. v. Schering-Plough Corp.*, No. AMD 04-1663, 2006 U.S. Dist. LEXIS 49311, at *6-9 (D. Md. July 6, 2006) (denying motion to disqualify because firm properly screened the disqualified attorney, who was also not apportioned a fee from that client); *Greitzer & Locks v. Johns-Manville Corp.*, No. 81-1379, 1982 U.S. App. LEXIS 21211 (4th Cir. 1982) (vacating trial court's grant of motion to disqualify, holding that the trial court's determination that the screening of the conflicted attorney failed to protect against inadvertent disclosure of confidences and trial secrets learned in the prior representation was erroneous); *c.f. Stratagene,* 225 F.Supp.2d at 613-14 (granting motion to disqualify because not only was the attorney disqualified under 1.10 "not screened from this matter, but she appears to have been heavily involved").

Additionally, Mr. Gittins maintains that he possesses no material information, confidential information, documents, communications or other materials relating to the instant case. *See*

**Exhibit 1**; Md. Rule 19-301.9, cmt. 5; *Gaumer*, 811 F.Supp. at 1120 (refusing disqualification of litigation counsel based on alleged prior conflict with attorney who later joined the firm, accepting the attorney's affidavit stating that he did not currently possess, nor have access to, any of the former client's confidential communications or information relevant or pertinent to the current dispute and emphasizing that the movant's arguments concerning the possession of confidential information and/or potential that confidential confidences could be located in the future were "theoretical" and "so remote" that disqualification was unwarranted).  Thus, by operation of law, to the extent any conflict existed with respect to Mr. Gittins, it is not imputed to the firm or Mr. Dickerman, and there is no basis to disqualify Offit Kurman's counsel under Md. Rule 19-301.9.  Accordingly, Plaintiff's Motion to Disqualify should be denied.

## IV.        Plaintiff's Motion to Disqualify is clearly filed for tactical purposes and must be denied.

It is clear that Plaintiff's Motion to Disqualify is not brought in good faith, but rather was improperly filed for tactical and strategic purposes and must be denied.

Mr. Gittins's sworn affidavit unequivocally attests to the fact that he has never spoken to, communicated with, met, or ever interacted with Plaintiff, and has never represented her in any capacity or possessed an attorney-client relationship with Plaintiff. *See* **Exhibit 1**.  On the other hand, Plaintiff's Motion lacks any genuine support and is rife with false statements. Plaintiff's Motion is the very species of improper, abusive disqualification motion that Courts are required to be mindful of and protect against. *See, e.g. Shaffer,* 966 F.2d at 146; *Sitel*, No. CCB-06-3457, 2007 U.S. Dist. LEXIS 106529, at *3-4; *Buckley*, 908 F.Supp. at 307.

The sequence of events leading to its filing further evidences that the Motion was filed purely as an abusive tactical device – a weapon to be used against Offit Kurman. *See Satellite Fin. Planning*, 652 F.Supp. at 1283. Plaintiff filed her Complaint on December 12, 2017, and later filed

a strategic bankruptcy petition in order to delay and impede separate litigation Plaintiff was involved in. *See* **ECF 1** and **ECF 8**. Plaintiff's bankruptcy case (Bankruptcy Case No. 18-13244-WIL) was dismissed in late 2019, but not without Plaintiff filing multiple motions to reconsider, alter and/or amend and pursuing an appeal. *See* Docket in Bankruptcy Case No. 18-13244-WIL**,** attached as **Exhibit 6**. On December 4, 2019, Plaintiff's prior counsel, Roger Simmons, entered his appearance and filed a Motion to Reopen this case, as it had been administratively closed due the Plaintiff's bankruptcy proceeding. *See* **ECF 11 – 12**. This case was reopened on December 16, 2019, yet Plaintiff did not request reissuance of summons until June 17, 2020. **ECF 13– 16**.

After Offit Kurman's counsel was assigned following an unsuccessful attempt to serve process on Offit Kurman, during a July 8, 2020 phone call between counsel, Mr. Simmons first raised the allegation of a conflict of interest concerning Mr. Gittins. Immediately thereafter, Mr. Dickerman discussed the alleged conflict with Mr. Gittins, who confirmed that he had never represented Plaintiff and no conflict existed with respect to the allegations in the Complaint. *See* **Exhibit 1**. Mr. Dickerman notified Mr. Simmons that Mr. Gittins never represented Plaintiff  and no conflict existed, but out of an abundance of caution, Mr. Gittins was screened from any involvement in the representation of Offit Kurman. *See* **Exhibit 7**. Mr. Simmons indicated that he would review the conflict issue with Plaintiff and agreed that, in the event they still believed there was a conflict of interest, he would expeditiously inform Mr. Dickerman and provide any relevant information or proof to support such a claim so that the issue could be promptly resolved. *See Id.*

On July 9, 2020, Mr. Simmons sent Mr. Dickerman an email in response to Mr. Dickerman's letter. *See* **Exhibit 8**. Mr. Dickerman immediately called Mr. Simmons to discuss the pressing issue of the alleged conflict of interest which was preventing counsel from engaging in substantive preparations to develop defense strategy and respond to the Complaint until the conflict

issue was resolved.  *Id.* Counsel later resumed their discussion on July 10, 2020 and the conflict issue was believed to be resolved, as Mr. Simmons acknowledged he lacked any evidentiary support for the conflict allegation, and after discussing the deficiencies in the Complaint, Mr. Simmons agreed that Offit Kurman would not need to respond until an amended complaint was filed. *Id.* Subsequently, Mr. Simmons never provided Offit Kurman's counsel with any documents or other evidence to refute the fact that Mr. Gittens *never represented Plaintiff in any capacity* or that the scope of Mr. Gittins's representation of Myers was very limited and unrelated to the matters at issue in the instant litigation, despite the requests for any such evidence.

After an extended time without any further communications or an Amended Complaint from Mr. Simmons it was discovered that on August 5, 2020, Mr. Simmons had withdrawn his appearance in the case citing "material, irreconcilable differences of opinion to the extent that continued representation" was no longer feasible. *See* **ECF 19**. Upon discovering that Mr. Simmons had withdrawn from the case, on August 13, 2020, Mr. Dickerman promptly entered his appearance and sent correspondences to both the Court and Plaintiff regarding the agreement with prior counsel and intent to proceed with filing a response to the Complaint that prior counsel had acknowledged was severely deficient but nonetheless not amended to cure the defects. *See* **ECF 22-23**. Offit Kurman's Motion to Dismiss was then timely filed on September 3, 2020. *See* **ECF 25**.

Despite her prior counsel implicitly acknowledging that no genuine conflict existed as alleged by Plaintiff and agreeing to proceed with Mr. Dickerman as opposing counsel and to file an amended complaint due to the deficiencies raised by Mr. Dickerman in early July 2020, and despite acknowledging that she received Mr. Dickerman's August 13, 2020 letter an notice of entry of appearance, Plaintiff strategically waited until after Offit Kurman's had incurred the significant

time and expense preparing and filing the Motion to Dismiss on September 3, 2020 before she renewed contrived allegation that Mr. Gittins had a conflict of interest that disqualified Mr. Dickerman and Eccleston & Wolf from representing Offit Kurman. *See* **Exhibit 9**. Despite promptly responding to Plaintiff's email asserting the conflict and requesting that Plaintiff provide any documentation evidencing that Mr. Gittins actually did have a conflict, Plaintiff never responded and never provided any information or evidence supporting even an inference that a conflict existed. *Id.* Moreover, Plaintiff strategically exploited her time to respond to the Motion to Dismiss to instead prepare a frivolous Motion to Disqualify, and used an alleged family emergency as a pretext to secure an extension of time to respond to the Motion to Dismiss from Offit Kurman's counsel on September 5, 2020, the day before it was due, while concealing the fact that Plaintiff would be filing a motion on the original deadline, but that it would be the Motion to Disqualify not a response to the Motion to Dismiss, demonstrating clear bad faith by the Plaintiff. *See* **Exhibit 10**.

Plaintiff made a tactical decision to delay in filing her frivolous Motion to Disqualify until after Offit Kurman had incurred the expense with counsel to prepare its defense strategy and draft a Motion to Dismiss, filing the Motion months after the issue had seemingly been resolved with prior counsel, and despite repeated requests for additional information or documentation to support the conflict allegation being ignored by Plaintiff. Even her Motion filed with the Court lacks any exhibits or supporting evidence to prove that any conflict exists. Plaintiff's Motion to Disqualify should be denied because the totality of the circumstances demonstrate that Plaintiff's Motion to Disqualify itself is purely tactical, and further that Plaintiff's purposeful delay in filing the Motion was equally strategic and intended to harass and prejudice Offit Kurman and unnecessarily increase the litigation expenses incurred by Plaintiff's litigation adversary. *See, e.g.*, *Gross*, 307

F.Supp.2d at 723-25 (failure to timely file a motion to disqualify results in a waiver of the right to raise the disqualification issue, in order to curb the use as litigation tactic to harass the opposing party) *Buckley*, 908 F. Supp. 299

Several relevant factors must be considered when determining whether a party has waived their right to seek disqualification, including: (1) when the movant learned of the conflict; (2) whether the movant was represented by counsel during the delay; (3) why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and (4) whether disqualification would result in prejudice to the nonmoving party. *Fenzel*, No. DKC 13-0379, 2014 U.S. Dist. LEXIS 177549, at *10 (D. Md. Dec. 29, 2014) (*quoting Buckley*, 908 F.Supp. at 307) (*internal quotations omitted*). Plaintiff obviously learned of the alleged conflict, or more accurately determined she would pursue accusations of an alleged conflict, immediately upon Eccleston & Wolf becoming involved in the case, as the allegation was raised during the first conversation between counsel. Plaintiff was represented by counsel when the issue was raised, addressed, discussed and purportedly resolved in early July, and continued to be represented for approximately one month thereafter until Plaintiff's counsel withdrew due to irreconcilable differences with Plaintiff.  The nature of the delay and timing of the motion demonstrates that the Motion was clearly filed for tactical reasons and delayed as long as possible in order to ensure that Offit Kurman incurred the greatest possible expense, and that if successful, the disqualification would result in the greatest possible prejudice. In that regard, Offit Kurman would suffer significant, unreasonable and unnecessary prejudice if the Court were to disqualify its counsel, given that significant time and expense has been incurred in the investigation of the claims, preparation of Offit Kurman's strategy and defenses, and because Plaintiff purposefully waited until after Offit Kurman filed its Motion to Dismiss and until Plaintiff's original deadline for

responding to the Motion to Dismiss before filing the Motion.   Accordingly, Plaintiff's purely tactical and abusive Motion to Disqualify must be denied as she waived her right to seek disqualification.

Finally, because Plaintiff's tactical decision to wait until the deadline for her response to Offit Kurman's Motion to Dismiss before filing the Motion to Disqualify, under the circumstances, the Court should not consider this Motion until after it decides Offit Kurman's Motion to Dismiss, as the Motion could be irrelevant if the Court grants Offit Kurman's Motion and dismisses the defective claims asserted against Offit Kurman.  Moreover, Plaintiff has revealed her intention to amend the Complaint in order to add Myers as a party Plaintiff, another improper tactic clearly aimed at causing further delay and intentionally creating additional issues to impede the administration of justice by any means necessary. Given that Plaintiff's claims all arise from and depend upon the Credit Agreement to which Myers is not a party, the Court should reject any attempt by Plaintiff to improperly inject Myers into this dispute.

## <u>CONCLUSION</u>

WHEREFORE, based on the forgoing, Offit Kurman, P.A. respectfully requests that this Honorable Court deny Plaintiff's Motion for Disqualification of Counsel, and for any such other or further relief as may be just and proper under the circumstances.

Respectfully submitted,

*/s/ James E. Dickerman*
James E. Dickerman (10687)
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: dickerman@ewmd.com
*Attorney for Defendant*

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 19, 2020, copies the foregoing OFFIT KURMAN,

P.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISQUALIFICATION OF COUNSEL

was served by first-class mail, postage prepaid to:

> Barbara Ann Kelly
> 700 Gulf Shore Blvd. North
> Naples, Florida 34102
> Pro se Plaintiff

> */s/James E. Dickerman*
> James E. Dickerman (10687)