**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BARBARA ANN KELLY        *

       *

v.        *        Civil No. CCB-17-3668

       *

OFFIT KURMAN, P.A.        *

       ************

## MEMORANDUM

In this case plaintiff Barbara Ann Kelly brings breach of contract, fraud, malpractice, breach of fiduciary duty, and intentional infliction of emotional distress claims against her prior counsel, defendant Offit Kurman, P.A. ("Offit Kurman"). Pending before the court is Offit Kurman's motion to dismiss, (ECF 25), and several additional motions. Kelly has filed a motion to disqualify counsel for Offit Kurman. (ECF 27). Kelly's husband, Gregory Myers, has moved to intervene as a plaintiff in the case. (ECF 52). Offit Kurman opposes those motions. In response to various filings Kelly has made, Offit Kurman has filed a motion to strike Kelly's amended complaint, (ECF 35), and a motion to strike Kelly's suggestion of bankruptcy, (ECF 55). Kelly opposes those motions. These matters have been fully briefed or the parties have had an opportunity to respond, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the court will deny the motion for disqualification and the motion to intervene and will grant the motion to strike the amended complaint, the motion to strike the suggestion of bankruptcy, and the motion to dismiss.

## FACTUAL BACKGROUND

On or about December 13, 2013, Kelly and Offit Kurman entered into a Credit Agreement ("Agreement"). (ECF 1, Compl. ¶ 6; ECF 1-2, Agreement). Under the terms of the Agreement, Offit Kurman was to provide "future legal services" to Kelly, by representing her in four pending

actions to which Kelly was a party: *Kelly v. Davis et al.*, Case No. 3:10-cv-00392-MW-EMT (N.D. Fla.) ("Seaside Case"); *Kelly et al v. Regions Bank*, Case No. 3:11-cv-00252-MCR-EMT (N.D. Fla.) ("Regions Case"); *Regions Bank v. Kelly et al.*, Case No. 2010-CA-001162 (1st Jud. Cir. Ct. Walton Cnty.) ("Lot 6 Case"); *United States Bank N.A. v. Kelly et al.*, Case No. 11-2009-CA-010813 (20th Jud. Cir. Ct. Collier Cnty.) ("Naples Case"). (ECF 1-2, Agreement, art. I ¶¶ 1–4).

In exchange for those future legal services, Kelly agreed to pay a previously accrued balance of $231,222.40 in legal fees to Offit Kurman, plus the total of all fees and costs rendered in November 2013 in the Regions Case and the Lot 6 Case ("the November Balance"), plus all fees and costs incurred in performing the future legal services. (*Id.*, art. II, Credit and Payment Terms). Kelly agreed to pay the November Balance by no later than December 31, 2013. The remainder of the fees were due according to a payment plan set forth in the Agreement and were secured by a $550,000 mortgage ("Florida Mortgage") encumbering in favor of Offit Kurman two unimproved real properties located in Walton County, Florida: "Lot 3 Watercolor," owned by Kelly and "Lot 6 Seaside," owned by Kelly and Myers. (*Id.*, art. II, Credit and Payment Terms, Ex. A to Agreement, Florida Mortgage; ECF 1-3). Kelly further agreed that Lot 6 Seaside would be "listed for sale no later than January 20, 2014, and that the list price for the property would be no more than $1.955 million, unless otherwise agreed in writing by Offit Kurman." (ECF 1-2, Agreement, art. II, Credit and Payment Terms).

The Agreement gives Offit Kurman the "sole discretion" to declare Kelly in default of the Agreement in the event of one of several scenarios, including "if Kelly shall breach or fail in the performance of any of the terms, conditions or covenants of this Agreement to be observed or performed by Kelly . . . and such breach or failure is not cured within thirty (30) days after delivery of written notice thereof[.]" (*Id.*). "Upon the occurrence of any Event of Default, at the option of

Offit Kurman, all sums due" under the Agreement "shall become immediately due and payable . . . . [and] Offit Kurman, at its option, may discontinue providing Future Legal Services to Kelly." (*Id.*). A failure by Offit Kurman to exercise such option "shall not be deemed a waiver of the right to exercise same at any time, including a subsequent Event of Default." (*Id.*). The Agreement may not be modified "unless the [modification] is in writing and signed by all parties." (*Id.*).

Myers was not a party to the Agreement nor an obligor with respect to the fees due under the Agreement, but joined the Agreement "for the limited purpose of confirming (a) that he has read this Agreement, (b) that he agrees to execute the Florida mortgage, with the understanding that title to [Lot 6 Seaside] shall be encumbered thereby, and (c) that he agrees to the terms of the Covenant Regarding Lot Sales" . . . to the extent that those terms pertain to [Lot 6 Seaside]." (*Id*).

On September 24, 2015, Aaron Bukowitz, on behalf of Offit Kurman, sent Kelly a letter alleging that Kelly was in breach of the Agreement. Specifically, the letter asserted that Kelly had not listed Lot 6 Seaside for sale by the agreed upon deadline, January 20, 2014. (ECF 1. Compl. ¶ 12–13; ECF 1-7, Sept. 24, 2015, Ltr.). Bukowitz advised that "given that this breach necessarily cannot be cured, inasmuch as it is one related to a failure to act within a specific time frame set forth in the Credit Agreement" Offit Kurman would have the option to discontinue its provision of legal services to Kelly on the thirty-first day following the date of the letter. (ECF 1-7, Sept. 24, 2015, Ltr.).[1]

Kelly alleges that on August 12, 2014, Timothy Lynch, an Offit Kurman attorney, sent Myers an email "which confirms, in writing, that the reason Lot 6 Seaside . . . was not listed for

---

[1] By the time Bukowitz sent Kelly the September 24, 2015, notice of default, two of the four legal matters associated with the Agreement had concluded. The parties reached settlement in the Lot 6 case on April 27, 2015. (ECF 25-10, Lot 6 Case Dkt.). The case was dismissed on March 16, 2017. (*Id.*). The Notice of Dismissal by Regions Bank lists Offit Kurman as counsel for Kelly and Myers on its Certificate of Service. (ECF 25-13, Lot 6 Case Notice of Dismissal). The Regions Case was dismissed by joint motion of the parties on April 10, 2015, after the parties reached settlement. (ECF 25-19 Regions Case Joint Motion to Dismiss; ECF 25-14, Regions Case Dkt.).

sale pursuant to the term of the Credit Agreement was because Offit Kurman instructed that Lot 6 not be listed pursuant to the terms of the Credit Agreement given the procedural posture of one of the four legal matters identified in the Credit Agreement[.]" (Compl. ¶ 13). The August 12, 2014, email from Lynch to Myers is attached to the complaint as an exhibit. (ECF 1-8, Aug. 12, 2014, Email). In connection with collections efforts by Regions Bank against Myers, Lynch wrote that he wanted to discuss with Myers "when to list Lot 6," and further stated: "I think that you should list it ASAP in case things do not go as planned at our hearing. I think that Regions will be super aggressive on its collection efforts." (ECF 1-8). Kelly does not allege that she and Offit Kurman agreed in writing that Lot 6 Seaside should not be listed by January 20, 2014 as contemplated by the Agreement.

Offit Kurman moved to withdraw as counsel for Myers and Kelly in the Naples Case on September 25, 2015 and November 3, 2015, respectively. (ECF 25-35, Myers Withdrawal; ECF 25-9, Kelly Withdrawal). The motion as to Myers was granted on October 1, 2015. (ECF 25-3, Naples Case Dkt. at 25). New counsel entered an appearance on behalf of both Myers and Kelly on May 8, 2017. (*Id.* at 29). Offit Kurman moved to withdraw as counsel for Kelly in the Seaside Case on July 6, 2012, prior to the Agreement, citing non-payment of fees and irreconcilable differences. (ECF 25-22, Seaside Case First Motion to Withdraw). That motion was renewed on November 7, 2015 and granted on November 10, 2015, after Kelly had obtained new counsel. (ECF 25-20, Seaside Case Dkt.).[2]

On December 2, 2016, Gregory Johnson, an attorney with Offit Kurman, sent a letter to Kelly titled "Supplemental Notice of Default Demand for Payment and Imminent Suit Filing."

---

[2] On October 5, 2015, Bukowitz sent a letter to Kelly and Myers informing them that Offit Kurman was withdrawing from its representation of Kelly and Myers in seven litigation matters not associated with the Agreement. (Compl. ¶ 14; ECF 1-9, Oct. 5, 2015 Ltr.).

(ECF 1, Compl. ¶ 17; ECF 1-12, Dec. 2, 2016 Ltr.). The letter notifies Kelly of a "supplemental default" under the agreement for failure to pay a monthly amount due of $19,500.00 on or before December 1, 2016. The letter further attaches a ledger of fees for each of the four cases associated with the Agreement, an amortization schedule, and a copy of the September 24, 2015, letter. (*Id.*).

On July 6, 2017, Kelly sent an email to Bukowitz and Johnson concerning a claim Offit Kurman filed on October 18, 2016, case caption "*In re Gregory B. Myers*, Case No. 15-26033-WIL." (ECF 1, Compl. ¶ 18; ECF 1-13, Jul. 6, 2017 Email). Kelly asked, "[p]ursuant to the terms of the attached Mortgage and the disclosure requirements of the federal Truth-in-Lending Act, please immediately forward to me a copy of the legally required disclosure of the purported debt/lien which Offit Kurman, P.A. is claiming in the above referenced case, which disclosure was required by law to be provided to me at the time the purported debt/lien was incurred." (*Id.*). Kelly alleges that Offit Kurman did not respond to this request. (ECF 1, Compl.¶ 18).

## PROCEDURAL HISTORY

This case has a lengthy and cumbersome history which the court will explain in considerable detail given the number of motions pending in this case and the relationship between this history and the merits of those motions.

On December 12, 2017 Kelly, proceeding *pro se*, filed this action against Offit Kurman alleging breach of contract (Count I); Truth-In-Lending Act ("TILA") (Count II); Fair Debt Collection Practices Act ("FDCPA") (Count III); constructive fraud, fraudulent inducement, and fraudulent misrepresentation (Count IV); breach of fiduciary duty (Count V); legal malpractice (Count VI); and intentional infliction of emotional distress ("IIED") (Count VII) claims. (ECF 1, Compl.).

Kelly alleges that Offit Kurman breached the Agreement by failing to prosecute the four actions named in the Agreement and "without just cause, discontinuing the provision of legal services and prematurely withdrawing its representation." (ECF 1, Compl. ¶ 21). The breach, she alleges, rose to the level of intentional infliction of emotional distress. (*Id.* ¶ 76–84). She further alleges that her TILA and FDCPA claims arise out of Offit Kurman's alleged failure to provide a TILA disclosure in connection with her 2017 email request and because it sent Kelly a breach letter and supplemental notice of default in connection with the Agreement. (*Id.* ¶¶ 27–35). As for her fraud claims, Kelly asserts that Offit Kurman made false statements to Kelly that the Agreement and Florida Mortgage were authorized, lawful, and in her best interest in order to induce her to agree to both. (*Id.* ¶ 37–51). Her breach of fiduciary duty and legal malpractice claims arise from similar allegations. (*Id.* ¶ 52–75).

On March 29, 2018, Offit Kurman filed a Suggestion of Bankruptcy, requesting that the court stay proceedings in light of Kelly's March 13, 2018 Voluntary Petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Maryland, Case No. 18-13244. The court issued an order acknowledging that an automatic stay had issued as a result of the bankruptcy proceedings and administratively closing the case. (ECF 10).

On December 4, 2019, Kelly, then represented by counsel, moved to reopen the case, in light of the dismissal of Kelly's bankruptcy case. (ECF 12 at 1–2). On December 16, 2019, the court granted the motion to reopen. (ECF 13). On May 15, 2020, having received no further filings or correspondence, the court requested a status report by June 8, 2020. (ECF 14). On June 8, 2020, counsel for Kelly filed a status report representing that Offit Kurman had not yet answered the Complaint, but should Offit Kurman or the court take the position that service anew was required

in light of the intermediate stay, Kelly was prepared to issue a new summons and repeat service. (ECF 16). A summons was reissued to Kelly on June 18, 2020. (ECF 18).

On August 5, 2020, counsel for Kelly moved to withdraw his appearance, representing that he and Kelly had "developed material, irreconcilable differences of opinion to the extent that continued representation [was] not in the best interests of" Kelly. (ECF 19). The court granted the motion on August 6, 2020. (ECF 20). On August 13, 2020, counsel for Offit Kurman filed a "Line Regarding Service of the Complaint on Behalf of the Defendant." (ECF 23). Counsel for Offit Kurman represented that he had engaged in discussions with Kelly's former counsel regarding Offit Kurman's acceptance of service of the Complaint in which Kelly's former counsel stated that he intended to file an amended complaint. (*Id.* at 1). Counsel agreed that Offit Kurman would not respond to the Complaint until the proposed amended complaint was filed by counsel for Kelly. (*Id.*; ECF 23-1). After failing to receive an amended complaint, counsel for Offit Kurman reviewed the docket and discovered that counsel for Kelly had withdrawn from the case. Thereafter, on August 13, 2020, counsel for Offit Kurman sent Kelly a letter, agreeing to accept service of the original complaint on behalf of Offit Kurman as of August 13, 2020. (ECF 23 at 1–2).

On September 3, 2020, Offit Kurman filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF 25). On September 8, 2020, the Clerk of the Court mailed a notice to Kelly notifying her of Offit Kurman's motion and indicating that she had a right to file a response to the motion within twenty-eight days of the notice. (ECF 26). On October 5, 2020, the day before her response was due, Kelly emailed Offit Kurman's counsel to request a twenty-eight-day extension of time to respond to the motion, stating that she was "required to travel to NC over the weekend for a family issue." (ECF 31-10). Counsel consented to a fourteen-day extension. (*Id.*). The next day, October 6, 2020, Kelly filed a motion to disqualify

counsel for Offit Kurman, Eccleston & Wolf P.C. ("Eccleston & Wolf") (ECF 27), and a consent motion for extension of time to respond to the motion to dismiss, (ECF 28). The motion to disqualify argues that Eccleston & Wolf's representation of Offit Kurman presents a conflict of interest because an attorney employed with the firm, Robert Gittins, formerly represented Kelly and her husband Myers in several matters, including as counsel for Myers in connection with the Agreement and Mortgage at issue in this case. (ECF 27 at 2–6, 8–10). Offit Kurman timely opposed the motion and included with its opposition a sworn declaration by Gittins in which he confirms that he represented Myers in several matters, but denies that he has ever represented Kelly in any legal matter and states that he has no recollection or record of providing legal services to Myers in connection with the Agreement or Mortgage. (ECF 31-1, Gittins Decl. ¶¶ 7–26). Gittins further avers that he has been screened from any involvement in the representation of Offit Kurman in this litigation. (*Id.* ¶ 27).

On October 15, 2020, Kelly filed a motion to stay the case pending the court's ruling on the motion for disqualification. The court granted the consent motion, thereby extending Kelly's deadline to respond to the motion to dismiss through October 20, 2020, (ECF 29), and the court denied the motion to stay, (ECF 32).

On October 30, 2020, ten days after Kelly's extended deadline to respond to Offit Kurman's motion to dismiss had passed, Kelly filed not a response to the motion, but an amended complaint, (ECF 33), which she further supplemented with exhibits on November 13, 2020, (ECF 34). Offit Kurman moved to strike the amended complaint. (ECF 35). On November 24, 2020, Kelly filed a motion for enlargement of time to file a reply in support of her motion for disqualification and to file an opposition to the motion to strike through December 31, 2020. (ECF 36). The court granted this motion, but extended Kelly's deadline to make both filings only through

December 18, 2020 and noted "that it has become plaintiff's pattern in this litigation to delay deadlines. For instance, the motion to enlarge time before the court was filed twenty-two days after the deadline for her to file her reply to the motion for disqualification, and plaintiff appears to provide no excuse for the delay in seeking an extension. See Fed. R. Civ. P. 6(b)(1)(B)." (ECF 38). On December 18, 2020, Kelly filed a further motion for extension of time to make these filings. (ECF 39). On December 21, 2020, without an order from the court on her motion for an extension, Kelly filed a response to the motion to strike and a reply in support of her motion to disqualify, which presented, for the first time, additional documentary evidence in support of her motion. (ECFs 40, 41). Offit Kurman thereafter filed a motion for leave to file a surreply. (ECF 42). On January 26, 2021, the court granted the motion for leave to file a surreply and Kelly's unopposed motion for extension of time, but reiterated that "the plaintiff has continued to delay deadlines in this litigation[.]" (ECF 50). The court further ordered that it would permit no further briefing on the motion to disqualify. (*Id.*).

Two days later, Myers moved to intervene in the case. (ECF 52). Offit Kurman timely responded to the motion. (ECF 53). Myers did not file a reply, but on March 1, 2021, Kelly filed a Suggestion of Bankruptcy that Myers had filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida, Case No. 2:21-bk-00123, and requested, in light of Myers's pending motion to intervene, that the court stay the case. (ECF 54). Offit Kurman has moved to strike the Suggestion of Bankruptcy, (ECF 55), Kelly opposes that motion, (ECF 56), and Offit Kurman has replied, (ECF 57).

The motions now pending before the court, Offit Kurman's motion to dismiss (ECF 25), Kelly's motion for disqualification, (ECF 27), Offit Kurman's motion to strike the amended complaint (ECF 35), Myers's motion to intervene (ECF 52), and Offit Kurman's motion to strike

9

the suggestion of bankruptcy (ECF 55) are either fully briefed or all parties have had an opportunity to respond and they are ready for resolution.

## DISCUSSION

As should be evident at this point, this straightforward state common law case has been made unnecessarily complex. Thus, the court will endeavor to provide a clear roadmap as to the resolution of the pending motions. As the court will explain, the motions in this case are interrelated and are the result of Kelly's tactics to delay deadlines and/or delay the court's ruling on the motion to dismiss, and several of the motions before the court require consideration of the extent of Myers's involvement in the Agreement at issue and the history of his relationship with Offit Kurman and Robert Gittins. The court will address Myers's relationship to the Agreement and to Gittins first and will then turn to the motion to strike suggestion of bankruptcy, the motion to intervene, the motion to disqualify, the motion to strike the amended complaint, and finally, the motion to dismiss.

### I.    Myers's Interest in the Litigation

Kelly has asserted in various filings that Myers is a party to the Agreement. (ECF 41 at 4 n.4; ECF 52 at 3; ECF 56 at 3). Following the Maryland rule of the objective interpretation of contracts, the court looks to the language of the contract itself to determine its meaning and whether Myers was intended to be a party to the Agreement. *See Wash. Metro. Area Transit Auth. V. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007). The first paragraph of the Agreement reads:

> For value received, the undersigned, Barbara Ann Kelly ("Kelly") and Offit Kurman, P.A. ("Offit Kurman") enter into this Credit Agreement (this "Agreement") as of the 13th day of December, 2013. Gregory B. Myers ("Myers") joins this Agreement *not as a party*, but only for the limited purpose set forth below.

(ECF 1-2, Agreement at 1, emphasis added). As explained previously, the Agreement concerns Offit Kurman's representation of Kelly in in the Seaside Case, the Regions Case, the Lot 6 Case, and the Naples Case, and the legal fees Kelly owed or might incur in connection with that representation. For three of those cases, the Regions Case, the Lot 6 Case, and the Naples Case, one of Offit Kurman's obligations under the Agreement was that it would not "dismiss, settle, or otherwise resolve" those cases "without the express written consent of Kelly and Myers." (*Id.* at art. I ¶¶ 2–4). As explained previously, the Regions Case and the Lot 6 case have been terminated, (ECF 25-19 Regions Case Notice of Dismissal; ECF 25-15, Regions Case Dkt.; ECF 25-10, Lot 6 Case Dkt.), and Offit Kurman has not been counsel for Myers in the Naples Case since 2015, (ECF 25-3, Naples Case Dkt. at 25). To the extent the Agreement created obligations on Offit Kurman's part to Myers, those obligations have been resolved.

The Agreement further explains that Myers joins

> *not as a party hereto* or obligor with respect to the Total Amount Due, but rather, *for the limited purpose* of confirming (a) that he has read this Agreement, (b) that he agrees to execute the Florida Mortgage, with the understanding that the title to [Lot 6 Seaside] shall be encumbered thereby, and (c) that he agrees to the terms of the Covenant Regarding Lot Sales," contained below, to the extent that those terms pertain to [Lot 6 Seaside]."

(ECF 1-2, art. II, Credit and Payment Terms, emphasis added). The "Covenant Regarding Lot Sales," in turn, provides that Myers and Kelly agree to list "Mortgage Parcel 2 (Lot 6 Seaside)" "no later than January 20, 2014," "for no more than $1.995 million, unless otherwise agreed in writing by Offit Kurman." (*Id.*).

Thus, the plain language of the Agreement makes clear that Myers *is not a party* to it. To the extent the Agreement involves Myers at all, it simply confirms that (1) Myers read the Agreement; (2) Offit Kurman was required to seek his written consent to dismiss, settle or otherwise resolve several legal matters (all of which have now concluded or in which Offit Kurman

is no longer involved); (3) Myers agreed to execute the Florida Mortgage; and (4) Myers agreed to list the Lot 6 Seaside property by January 20, 2014, for a price of no more than $1.995 million, "unless otherwise agreed in writing by Offit Kurman." (*Id.*).

As for Myers's relationship with Robert Gittins, in support of her motion to disqualify counsel, Kelly submitted (on reply only) a series of emails between Gittins and Myers that appear to concern the Agreement. In one email, Gittins attaches "redline drafts" of the Agreement and the Florida Mortgage and writes that he "spent 2.3 hours between our call and the review/revision of the subject documents." (ECF 41-4; *see* also ECF 41-5; ECF 41-6; ECF 41-7). None of these communications include Kelly. Kelly's reply in support of her motion to disqualify additionally includes communications between Gittins and Myers that appear to relate to other legal matters. (ECF 41-9; ECF 41-10). None of these communications include or mention Kelly.

With Myers's relationship to this action clarified, the court turns to the motions.

## II.     Motion to Strike Suggestion of Bankruptcy

First, the court must determine whether Myers's bankruptcy petition requires the court to stay this case. 11 U.S.C. § 362(a) provides that the filing of a voluntary petition of bankruptcy "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . [or] any act to obtain possession of property of the estate . . . ." "Among other things, the stay bars commencement or continuation of lawsuits to recover from the debtor, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020).

Kelly argues that Myers possesses a substantial legal interest in the outcome of this litigation such that the interest constitutes "property" within the meaning of 11 U.S.C. § 362(a).

Kelly and Myers have attempted similar arguments a number of times, including in this court, to no avail.

Myers attempted to use his latest bankruptcy petition in the Middle District of Florida to stay two actions he has pending before Florida state courts where he is a plaintiff. (*See* ECF 55-1, *In re Myers*, Case No.1:21-bk-00123-FMD, Order (Bankr. M.D. Fla. Feb. 4, 2021); ECF 55-2). The court granted a motion to confirm that the automatic stay did not apply to Myers in those cases where he was a plaintiff. And Myers's conduct in *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, No. 8:18-CV-03460-PX, 2020 WL 758151 (D. Md. Feb. 14, 2020), reconsideration denied, No. 8:18-CV-03460-PX, 2020 WL 1064810 (D. Md. Mar. 5, 2020),[3] before Judge Xinis, presents circumstances nearly identical to this case. In that action, Myers alleged breach of contract and tort claims against a different former counsel. *Id.* at *3. The defendant moved to dismiss the complaint and, like Kelly in this case, Myers did not file a responsive motion. Instead, he filed a suggestion of bankruptcy informing the court that he had filed a bankruptcy petition, which had the effect of further delaying the proceedings due to the automatic stay provision. *Id.* at *4. His bankruptcy petition was dismissed and once the case was reopened, the court granted several extensions of time to allow Myers to oppose the motion to dismiss, to no avail. Instead, Myers filed "*yet another* suggestion of bankruptcy, this time claiming that the case must be stayed because [his] wife, *who [was] not a party to this matter*, had filed a bankruptcy petition[.]" *Id.* The court refused to stay the case, concluding that "[t]he automatic stay provision applicable to *Kelly's* bankruptcy has no force and effect in this case because Myers is *not* the debtor in Kelly's Delaware Bankruptcy petition." *Id.* (citing *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (automatic stay provision "is generally said to be available only

_____

[3] Unpublished opinions are cited for the soundness of their reasoning rather than for any precedential value.

to the debtor, not third-party defendants or co-defendants"); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126 (4th Cir. 1983) ("[T]he plain wording of the statute . . . provides for an automatic stay of any judicial proceeding 'against the debtor.' . . . That insulation, however, belongs exclusively to the 'debtor' in bankruptcy.")).

The court finds Judge Xinis's analysis highly instructive and revealing of Kelly's and Myers's tactics. Kelly is attempting the same result Judge Xinis already prevented her husband from achieving in his similar case. Kelly is not the debtor in Myers's bankruptcy petition and thus, the protections the automatic stay provides does not belong to her in this case. And furthermore, even assuming Myers possesses some interest in the matter before this court or if the court permitted Myers to intervene (and, for the reasons explained below, it does not), an affirmative action brought by Kelly is in no way "an action proceeding against [Myers,] the debtor" or an "act to obtain possession of property" of his estate. 11 U.S.C. § 362(a); *see also McNamee*, 2020 WL 758151, at *5 (the "automatic stay provision, by its plain terms, does not reach an action where the debtor is the plaintiff") (citing cases, including *MTGLQ Inv'ers, L.P. v. Guire*, 286 F. Supp. 2d 561, 563–64 (D. Md. 2003)). The court further finds that the suggestion of bankruptcy is a continuation of what the court has described as a "pattern in this litigation to delay deadlines." (ECF 38). Myers's bankruptcy action was filed within hours of his motion to intervene in this case, a motion which, as the court will explain, appears to itself be designed to delay this case and bolster Kelly's claim that Eccleston & Wolf should be disqualified. Accordingly, the court will grant Offit Kurman's motion to strike the suggestion of bankruptcy and the automatic stay provision will not be applied to this case.

14

### III.     Motion to Intervene

Next, the court addresses Myers's motion to intervene.

Rule 24 provides for two types of intervention, intervention as of right and permissive intervention. "Intervention of Right" under Rule 24(a) requires the court to permit anyone to intervene upon timely motion who can show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); Fed. R. Civ. P. 24(a). "A party moving for intervention under [Rule] 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). "Permissive Intervention" allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The rule further requires that in "exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Rule 24(b)(3). Fed. R. Civ. P. 24(c) provides that a motion to intervene "must be served on the parties as provided in Rule 5" and "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

#### a.   Failure to Comply with Rule 24(c)

First, Myers's motion does not comply with Rule 24(c) as it is not "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Unaccompanied by a pleading, Myers's motion does little to apprise the court or Offit Kurman of

his proposed claims. Instead, the motion simply asserts that Myers has an interest in the Agreement (even though, as the court has already explained, he is not a party to it) and in the proceeds of the Lot 6 sale and vaguely asserts that he has legal malpractice, negligence, and emotional distress claims against Offit Kurman without any explanation as to whether and how those claims relate to Kelly's claims regarding Offit Kurman's conduct with respect to the Agreement. (*See* ECF 52 at 3–4). Though a failure to strictly comply with this requirement does not generally prevent intervention under Fourth Circuit precedent, *see Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 376–77 (4th Cir. 1980), the court highlights Myers's procedural defect as a further example of his and Kelly's efforts to complicate and frustrate the judicial process.

### b.  Intervention as of Right

#### i.  Timeliness

The determination of whether a motion to intervene under Rule 24(a) is timely is committed to the court's discretion and is guided by three factors: (1) how far the underlying suit has progressed; (2) why the movant was tardy in filing its motion; and (3) the prejudice any resulting delay might cause the other parties. *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014).

First, though this case is not at a very advanced stage (the motion to dismiss remains unresolved and no discovery has begun) it had been pending for over three years when Myers sought to intervene. While some delay was unavoidable due to Kelly's initial bankruptcy petition, since the case reopened in December 2019, Kelly's conduct has consistently prevented the case from progressing in a timely fashion. She delayed service of the complaint for over eight months, until Offit Kurman finally agreed to accept service in August 2020. Thereafter, Kelly failed to respond to Offit Kurman's motion to dismiss after several extensions, opting instead to file the motion to disqualify. Multiple extensions, late filings, and belatedly disclosed evidence in

16

connection with the motion to disqualify led to further delay, and only after the court made clear it would accept no further briefing on the motion, in January 2021, did Myers file his motion to intervene.

Second, Myers's motion indicates he has been aware of the claims he seeks to bring against Offit Kurman since February 2017 (*see* ECF 52 at 3), yet he offers no explanation why he waited to seek intervention until nearly four years later, in 2021. But the briefing on the motion to disqualify offers a clue. As the court will explain below, nothing in the record suggests that Gittins ever represented Kelly, meaning that the merits of her motion to disqualify depended in large part on her ability to argue that Gittins's prior representation of Myers created a conflict of interest in this litigation. Thus, Kelly hinted in a footnote in her motion that Myers would be added as a plaintiff (ECF 27 at 2 n.4). And indeed, another three months later and two days after the court ordered that there would be no further briefing on the motion, Myers filed his motion to intervene. The motion to intervene thus appears to the court to be an attempt by Kelly and/or Myers to gain a strategic advantage in pursuing the motion for disqualification. Delay of intervention for such strategic purposes alone may be sufficient to deny a motion to intervene based on untimeliness. *See Alt*, 758 F.3d at 591–92.

Third permitting Myers to intervene after such a delay would prejudice Offit Kurman as his intervention would likely result only in further attempts to litigate disqualification, an issue which has already been fully briefed.

In sum, Myers has not met his burden to establish that his motion is timely.

### ii. Interest in the Subject Matter of the Underlying Action, Ability to Protect Interest, and Adequate Representation

The subject matter of Kelly's action concerns Offit Kurman's advising her to enter into the Agreement and its decision to deem her in default of the Agreement for her failure to list Lot 6

17

Seaside by the agreed upon date. As the court has explained, Myers *is not* a party to the Agreement, except to the extent that he agreed, along with Kelly, to encumber the Lot 6 Seaside property and list it by January 20, 2014. That Offit Kurman deemed Kelly in default of the Agreement and pursued its rights thereunder has thus affected Myers financially to the extent that Offit Kurman asserted the Florida Mortgage as a claim against Myers in his 2015 Chapter 11 bankruptcy case. (ECF 53-4, *In re Myers*, Case No. 15-26033-WIL, Notice of Proposed Compromise and Settlement (Bankr. D. Md. Sep. 20, 2017)). But it is unclear how the legal malpractice, negligence, and emotional distress claims Myers seeks to pursue would protect his financial interest in Lot 6 Seaside, as Offit Kurman did not represent him in connection with the Agreement or the Florida Mortgage. And Myers appears to have already alleged in his bankruptcy case that Offit Kurman is not entitled to the proceeds of the sale of Lot 6 Seaside because it breached the Agreement in failing to diligently prosecute the four subject legal matters. (*See id.* at 8–11). The Maryland bankruptcy court rejected these arguments and approved a settlement between the United States Trustee and Offit Kurman, which constitutes a waiver and release of claims between Myers, the bankruptcy estate, and Offit Kurman. (*See* ECF 53-5, *In re Myers*, Case No. 15-26033-WIL, Order Granting Chapter 7 Trustee's Motion for Approval of Proposed Compromise and Settlement (Bankr. D. Md. Dec. 18, 2017)). The Fourth Circuit affirmed the approval of the settlement in 2019. (*See* ECF 53-7, *In re Myers*, No. 18-2144, Judgment (4th Cir. Jul. 11, 2019)).

At any rate, Kelly is a joint owner and mortgagor of the Lot 6 Seaside property and appears to have the same ultimate objective of proving that Offit Kurman breached the Agreement and thus is not entitled to the Lot 6 Seaside sale proceeds. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest,

18

collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). Myers has failed to demonstrate any adversity, collusion, or nonfeasance or any reason why his wife cannot adequately represent any interest he has in this matter. In sum, Myers has not met his burden to establish any of the four requirements for intervention as of right under Rule 24(a).

### c. Permissive Intervention

Myers's alternative argument that the court should grant him permission to intervene under Rule 24(b) is unpersuasive. As previously explained, the extent to which Myers's negligence, malpractice, and emotional distress claims overlap with Kelly's claims is not clear, given that Offit Kurman did not represent Myers in connection with the Agreement. Because Myers has not sufficiently explained his claims either in his motion or the pleading required by Rule 24(c), it is impossible for the court to evaluate any overlap. Moreover, Myers's intervention appears designed to further delay this litigation by complicating Kelly's motion to disqualify and/or by forcing Offit Kurman to respond to claims which have already been waived by the approved settlement in Myers's Maryland bankruptcy case.

*** 

The court concludes that Myers is not an appropriate intervenor under either type of intervention under Rule 24. Accordingly, the court will deny the motion to intervene.

## IV.   Motion to Disqualify

The court next turns to Kelly's motion to disqualify.

Maryland Rule of Professional Conduct 1.9 prevents a lawyer who has formerly represented a client in a matter from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Md. Rule 19-301.9.

19

"Motions for disqualification are disfavored and are 'permitted only where the conflict is such as clearly to call into question the fair and efficient administration of justice.'" *Dorsey v. Sokoloff*, 381 F. Supp. 3d 521, 527 (D. Md. 2019) (quoting *Gross v. SES Americom, Inc.*, 307 F.Supp.2d 719, 723 (D. Md. 2004)). Accordingly, Kelly, the party moving for disqualification "based on an attorney's alleged conflict of interest derived from representation in a prior matter must demonstrate (1) the existence of a previous attorney-client relationship between the challenged lawyer or law firm and the objecting former client, and (2) that the matter at issue in the present representation is 'the same or substantially related' to the matter at issue in the previous representation." *Dorsey*, 381 F. Supp. 3d at 527.

Kelly alleges that Gittins, an attorney at Offit Kurman's counsel, Eccleston & Wolf, previously represented her and Myers in a number of matters, including in relation to the Agreement. In Maryland, an attorney-client relationship arises when

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or (2) a tribunal with power to do so appoints the lawyer to provide the services.

*Att'y Grievance Comm'n of Md. v. Shoup*, 410 Md. 462, 490 (2009) (quoting Restatement (Third) of the Law Governing Lawyers § 14 (2000)). The relationship may be formed in the absence of an explicit agreement or payment arrangement and may arise "by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations." *Att'y Grievance Comm'n of Md. v. Brooke*, 374 Md. 155, 175 (2003). "The facts and circumstances of each particular case are critical" in determining whether such relationship exists. *Shoup*, 410 Md. at 489.

Kelly identifies three specific matters in which she asserts Gittins represented her. First, she asserts that Gittins drafted, reviewed, edited, and facilitated the Agreement and Mortgage on her behalf. (ECF 27 at 10). Second, Kelly argues that Gittins provided legal advice to her in connection with "Lot 13 on Seaside," a property related to the Seaside Case, one of the four matters discussed in the Agreement. (*Id.* at 10–11). Third, she argues Gittins provided her with legal advice in connection with a foreclosure over a property located at 4505 Wetherill Road, Bethesda, Maryland. (*Id.* at 11) Kelly does not present any communications or documents exchanged between her and Gittins that demonstrate an explicit agreement to an attorney-client relationship, but Kelly attempts to show that such relationship was implied by Gittins's representation of Kelly's husband, Myers. Kelly cites an email from Offit Kurman attorney Maurice Ver Standig to Gittins that reads, in relevant part:

> . . . I understand that you [Robert Gittins] now represent Gregory Myers in connection with the pending foreclosure proceeding concerning the home at 4505 Wetherill Road, in Bethesda, Maryland.
>
> As you [Robert Gittins] know, Timothy Lynch and I [Maurice VerStandig] represent Mr. Myers in several other proceedings, and we also represent his wife—Barbara Ann Kelly—in various other proceedings. Mr. Myers is often the party who Ms. Kelly nominates to interact with her counsel.
>
> In light of the foregoing, and per our discussion, please let me know if you can permit Mr. Lynch and myself to communicate directly with Mr. Myers Pursuant to Maryland Rule of Professional Conduct 4.2(a). . . .

(ECF 31-2, Aug. 28, 2015, M. VerStandig email). The significance of this email is not entirely clear, but Kelly appears to be arguing that Gittins knew or reasonably should have known that Kelly relied on him for legal advice simply because Gittins represented Myers concerning the 4505 Wetherill Road foreclosure and in light of VerStandig's statement that "Mr. Myers is often the party who Ms. Kelly nominates to interact with her counsel." That is, Gittins should have expected, based on a separate attorney's understanding of his own relationship with the Myers-Kelly family,

that any time Gittins gave legal advice to Myers, in reality he was also giving advice to Kelly. This argument is nonsensical, as there is no evidence that Gittins ever interacted with Kelly or that Myers presented himself to Gittins as her representative rather than an individual seeking advice on behalf of himself. Gittins has declared that he has never met Kelly, that she never requested that he act as her attorney, and that he has never knowingly communicated with Kelly. (ECF 31-1, Gittins Decl. ¶¶ 17, 19, 21). Kelly has not provided any evidence to the contrary. It is quite clear that though Gittins has represented Myers in a number of matters, he has never represented Kelly in any capacity. That Kelly directed VerStandig, a different attorney, to communicate with Myers when representing her, does not demonstrate with respect to Gittins that his communications with Myers were really directed at giving legal advice to Kelly, whom Gittins has never met.

As Kelly has failed to demonstrate the existence of a previous attorney-client relationship between herself and Gittins, disqualification is not warranted and it is not necessary to address whether any alleged previous representation is the same or substantially related to the issues in this case. The court additionally notes that even if Kelly were able to establish a conflict, disqualification would still not be appropriate. The Maryland Rules provide that "[w]hen an attorney becomes associated with a firm, no attorney associated in the firm shall knowingly represent a person in a matter in which the newly associated attorney is disqualified under Rule 19-301.9 unless the personally disqualified attorney is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Md. Rule 19-301.10(c). The alleged conflicts Kelly raises predate Gittins's employment with Eccleston & Wolf and out of an abundance of caution, Eccleston & Wolf has screened Gittins from any participation in the representation of Offit Kurman in this matter and he will receive no apportionment of fee nor any remuneration from Eccleston & Wolf's representation of Offit Kurman in this case. (ECF 31-1,

Gittins Decl. ¶ 27; ECF 51-1, Suppl. Gittins Decl. ¶ 10). Kelly has not attempted to demonstrate that this screening is somehow lacking, nor has she identified any concrete confidential information regarding any of her claims which Gittins possesses. Because the court has no reason to believe the screening measures Offit Kurman has implemented will not be effective even if an alleged conflict exists, there is no need to resort to the drastic measure of disqualification in this case. *See, e.g.*, *Compass Mktg., Inc. v. Schering-Plough Corp.*, No. AMD 04-1663, 2006 WL 1892405, at *3 (D. Md. July 6, 2006) (motion for disqualification denied even where actual conflict existed because conflicted attorney was adequately screened from the matter). Accordingly, the court will deny the motion to disqualify Offit Kurman.

## V.        Motion to Strike Amended Complaint

Next, the court will address Offit Kurman's motion to strike Kelly's amended complaint. Per Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions are generally viewed with disfavor," *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) and generally will not be granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party. Wright & Miller, Fed. Prac. & Proc. § 1382.

Under Federal Rule of Civil Procedure 15, a plaintiff is permitted to amend her complaint once as a matter of right within twenty-one days of (a) serving the complaint or (b) being served with a motion to dismiss; otherwise "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v.*

23

*BearingPoint*, *Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaining that leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile"). An amendment is futile when the proposed amended complaint would not satisfy the requirements of the federal rules. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

Offit Kurman argues that the amended complaint should be stricken because (1) it was filed in violation of Rule 15 and the court's Local Rules and (2) the filing of the amended complaint is prejudicial to Offit Kurman in that it was filed in bad faith to create further unnecessary delay in this litigation. The court addresses both arguments in turn.

Kelly filed her amended complaint on October 30, 2020, well beyond the twenty-one-day time period following service of Offit Kurman's motion to dismiss. Thus, Kelly was required either to obtain Offit Kurman's consent to file the amended complaint or the court's leave. Fed. R. Civ. P. 15(a)(2). Offit Kurman contends Kelly obtained neither. Kelly concedes that she did not seek leave from the court before filing the amended complaint, but argues that Offit Kurman did consent to her filing it, citing an email from counsel for Offit Kurman to Kelly's prior counsel sent July 10, 2020. The email memorializes a telephone conversation between counsel and states that counsel "agreed that Offit Kurman does not need to file a response to the pending Complaint and that [counsel for Kelly] will be filing an amended complaint. Offit Kurman then will have 30 days thereafter to file a response." (ECF 40-1, Jul. 10, 2015, Email). Also during the call, counsel for Offit Kurman "set forth [his] position with respect to the deficiencies in the Complaint[.]" *Id.* In Kelly's view, this agreement between her prior counsel and counsel for Offit Kurman extended to her even after her counsel had withdrawn from the case and for an indefinite period of time. This interpretation is not reasonable given the events that followed the email. Less than one month after

counsel for Offit Kurman's communication with Kelly's prior counsel, her counsel withdrew from the case, and counsel for Offit Kurman thereafter filed a line with the court indicating that when it learned counsel for Kelly had withdrawn without filing an amended complaint on her behalf, they sent to Kelly a letter agreeing to accept service of the original complaint and notifying her that Offit Kurman intended to file a response to the original complaint. (ECF 23). This line dispels any notion that Kelly could have believed she had counsel's consent to file the amended complaint. Nor did Kelly thereafter indicate that she intended to file an amended complaint or request that Offit Kurman wait to file its response.

In fact, Kelly's response to Offit Kurman's letter indicates quite the opposite. On September 3, 2020, Kelly advanced the position that Offit Kurman had been properly served back in 2018 and that she had never authorized her prior counsel to agree that Offit Kurman did not need to respond to the original complaint. (ECF 41-13, Sep. 3, 2020, Email). Given this representation, it is wholly unsurprising that counsel for Offit Kurman believed Kelly would not be filing an amended complaint and proceeded to file its motion to dismiss in response to the original complaint. The court thus agrees with Offit Kurman that the amended complaint was filed without consent from opposing counsel and without leave of the court.[4]

This brings the court to Offit Kurman's argument that the filing of the amended complaint is prejudicial, in bad faith, and intended to cause further delay. The amended complaint expands Kelly's allegations from twenty-five to thirty-five pages and adds allegations with either an unclear relationship to Offit Kurman's alleged conduct with respect to the Agreement or which may relate to the Agreement but were known at the time of the filing of the original complaint. For example,

---

[4] Kelly also failed to attach a proposed red-lined amended complaint, in violation of Local Rule 103.6. But where a plaintiff is self-represented, the court does not generally reject a request to file an amended complaint based on a failure to comply with court rules alone without some showing of prejudice to the opposing party. *See, e.g.*, *Price v. Waste Mgmt., Inc.*, No. CIV.A. ELH-13-02535, 2014 WL 1764722, at *13–14 (D. Md. Apr. 30, 2014) (citing cases).

Kelly seeks to add a constructive fraud claim regarding a 2012 notice of lien Offit Kurman filed in the Seaside case and a fraudulent inducement and fraudulent misrepresentation claim regarding a 2012 complaint Offit Kurman filed against Kelly and Myers, neither of which appear to have any relationship to Kelly's claims regarding the Agreement. (S*ee* ECF 33, Am. Compl. ¶¶ 35–52). And she attempts to add a number of claims, including conversion, wrongful retention, and constructive fraud, which are aimed at recovering the sum of money Offit Kurman was awarded out of the Lot 6 sale proceeds in bankruptcy proceedings, offering no reason why those claims could not have been brought initially. (*See id.* ¶¶ 25–34, 53–73).

The court views the amended complaint as one of a number of filings by Kelly or Myers in this matter, including the suggestion of bankruptcy, the motion to intervene, the motion to disqualify, and the motion for stay, that appear designed to prevent or delay a ruling on Offit Kurman's pending motion to dismiss. The amended complaint's injection of unrelated and/or previously known issues into the case is evidence that the amended complaint was filed in bad faith and for the purpose of the delay and, like the motion to disqualify, the amended complaint was filed in lieu of a response to the motion to dismiss following one of the numerous extended deadlines the court offered to Kelly to submit such response. Permitting an amendment to the complaint now would cause further unnecessary delay, as it would supersede the operative complaint and moot the motion to dismiss, *see Fawzy v. Wauqiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017), thereby prejudicing Offit Kurman by forcing it to respond anew to the greatly expanded, but no more clarified, allegations in the amended complaint. In such circumstances, the court believes there is no alternative to striking the allegations in the amended complaint and proceeding to rule on the motion to dismiss. To the extent some arguments in the amended complaint appear to address some of Offit Kurman's motion to dismiss, (*see* ECF 33, Amended.

Compl. ¶ 17), the court will treat the amended complaint as a response to the motion to dismiss. Accordingly, the court will grant Offit Kurman's motion to strike the amended complaint and its accompanying exhibits.

## VI.    Motion to Dismiss

Finally, the court will address Offit Kurman's motion to dismiss Kelly's original complaint.

### a.  Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). The court is mindful of its obligation to liberally construe self-represented pleadings, such as the instant complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a

clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").

As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)), and documents submitted by the movant not attached to or expressly incorporated in the complaint, so long as they are "integral to the complaint and there is no dispute about the document's authenticity," *id.* (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)) (emphasis removed).

Allegations of fraud must be pled with particularity. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### b. Breach of Contract

To state a claim for breach of contract under Maryland law, a plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The parties do not dispute that

the Agreement formed a contractual obligation between them. The dispute centers instead on which party, if any, breached the Agreement.

Offit Kurman argues that Kelly fails to plausibly allege that it breached the Agreement, given that (1) the Agreement required Kelly to list Lot 6 for sale on or before January 20, 2014, (2) Kelly failed to abide by that term, (3) Kelly's failure to list Lot 6 as required by the agreement is an "Event of Default" under the Agreement, and (4) Offit Kurman had the right under the Agreement to discontinue legal representation in an Event of Default. Kelly does not dispute that the Agreement required her to list Lot 6 by January 20, 2014, or that a failure to do so would trigger an Event of Default, giving Offit Kurman the right to terminate its representation of her. Nor does she argue that she listed Lot 6 by January 20, 2014. Rather, her argument is that following the Agreement, Offit Kurman instructed her and Myers *not to list* Lot 6 pursuant to the terms of the Agreement. That is, Kelly alleges that Offit Kurman modified the Agreement and thereafter wrongfully claimed that she was in breach of a superseded version. In support of this allegation, Kelly cites the August 12, 2014, email from Offit Kurman attorney Timothy Lynch to Myers which states, in relevant part: "[W]e need to talk about the Regions letter, regions collection efforts and when to list Lot 6. I think that you should list it ASAP in case things do not go as planned at our hearing. I think Regions will be super aggressive on its collection efforts." (ECF 1-8, Aug. 12, 2014, Email). Although the email shows that Lynch was urging that the property be listed promptly, Kelly argues this email confirms her argument and further asserts that "Lynch would not use the phrase 'we need to talk about . . . *when* to list Lot 6' if the requirement in the original Agreement had not already been modified by mutual agreement." (ECF 33 ¶ 17).

Even assuming that Kelly's interpretation of the email is correct and that Offit Kurman agreed at some point prior to August 20, 2014, that Kelly should delay listing Lot 6 for tactical

litigation purposes, the Agreement states that the deadline to list Lot 6 was January 20, 2014, unless "otherwise agreed in writing by Offit Kurman." (ECF 1-2, Agreement, art. II, Credit Payment and Terms). Kelly does not allege Offit Kurman made any agreement to modify the listing deadline in writing before the August 20, 2014, email. Thus, Kelly has failed to allege facts sufficient to establish beyond a speculative level that Offit Kurman breached the Agreement. Accordingly, Kelly's breach of contract claim will be dismissed.

### c.   Truth-In-Lending Act

Kelly's TILA claim is based on the allegation that Offit Kurman failed to provide disclosures required by TILA regarding the Florida Mortgage and that Offit Kurman failed to respond to an email from Kelly on July 6, 2017, which requested those disclosures. Offit Kurman argues that TILA is inapplicable to this case as Kelly has failed to allege any facts establishing that Offit Kurman falls within the definition of a "creditor" under TILA and in any event, any TILA claim is time-barred.

In order "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit," *Gilbert v. Residential Funding, LLC*, 678 F.3d 271, 275–76 (4th Cir. 2012) (quoting 15 U.S.C. § 1601(a)), TILA requires that creditors disclose certain details about loans, fees, and costs. These requirements apply only to "creditors" as defined by the statute and the assignees of those creditors. Title 15 U.S.C. § 1602(g) defines a "creditor" as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ."

30

For a plaintiff to sufficiently plead a TILA claim, they must assert that the defendant is a "creditor" covered by the statute. *See, e.g.*, *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 566 (E.D.N.C. 2012); *Mosley v. OneWest Bank*, No. CIV.A. RDB-11-00698, 2011 WL 5005193, at *3 (D. Md. Oct. 19, 2011); *Carter v. Alston*, No. 3:05 CV 563, 2005 WL 3021974, at *2 (E.D. Va. Nov. 10, 2005). Kelly has made no attempt in her complaint to allege any facts that would indicate Offit Kurman regularly extends consumer credit such that it is plausible that it may fall within the definition of a creditor under TILA.

Moreover, actions under TILA must be brought within "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Disclosures required by TILA generally must be given before the credit is extended, *see id.* §§ 1637a, 1638(b), meaning that any violation Kelly could state would have occurred prior to the date the Florida Mortgage was executed in 2013. Kelly filed her complaint on December 12, 2017. Thus, any TILA claim would be barred by the statute of limitations. *See, e.g.*, *McCray Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 362 (4th Cir. 2016) (affirming dismissal of TILA claim based on statute of limitations where the plaintiff had notice that the defendant was the owner of the loan). Accordingly, Kelly's TILA claim will be dismissed.

### d.  Fair Debt Collection Practices Act

Kelly asserts that Offit Kurman failed to comply with the FDCPA in three separate instances: (1) when it sent to Kelly the September 24, 2015, letter asserting she had breached the Agreement, (2) when Offit Kurman sent to Kelly the December 2, 2016, letter titled "Supplemental Notice of Default," and (3) when it failed to respond to Kelly's July 6, 2017, letter requesting TILA disclosures. Offit Kurman argues the FDCPA does not apply because Offit Kurman is not a "debt collector" as defined by the FDCPA and, in any event, any FDCPA claim is time-barred.

31

In order to state a claim under the FDCPA, Kelly must allege that: 1) she has been the object of collection activity arising from consumer debt, 2) Offit Kurman is a debt collector as defined by the statute, and 3) Offit Kurman has engaged in an act or omission prohibited by the statute. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Like claims under TILA, claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The limitations period "runs anew from the date of each violation." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 408 (4th Cir. 2020). Even if the court were to assume that Kelly has plausibly alleged that Offit Kurman is a "debt collector" within the definition of the statute, which would require factual allegations (not made in this case) that Offit Kurman "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), each of the violations Kelly alleges occurred more than one year before Kelly filed her complaint on December 12, 2017. Accordingly, any FDCPA claim Kelly has alleged is barred by the statute of limitations and will be dismissed.

### e.  Fraud

Next, Kelly alleges that Offit Kurman "made false statements of material fact" to her "that the Credit Agreement and Mortgage were authorized, lawful and in [her] best interest" (ECF 1, Compl. ¶ 39) and that this constituted constructive fraud, fraudulent inducement, and fraudulent misrepresentation. Offit Kurman argues that Kelly's fraud claims must be dismissed because they are not stated with particularity under Federal Rule of Civil Procedure 9(b).

Kelly's fraud-based causes of action each require her to prove the following: (1) Offit Kurman made a false representation to Kelly (2) that was either known to the firm to be false or was made with reckless indifference as to its truth (3) for the purpose of defrauding Kelly, (4) and

that Kelly reasonably relied on the misrepresentation and (5) suffered injury as a result. *See Hoffman v. Stamper*, 385 Md. 1, 28 & n.1 (2005); *Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 153 (2002). Under Rule 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, Kelly must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel Wilson*, 525 F.3d at 379 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Kelly's conclusory assertion that Offit Kurman made false statements of material fact to her that the Agreement and Mortgage were authorized, lawful, and in her best interest does not meet the Rule 9(b) standard. Kelly has not pled the identity of the person making the alleged misrepresentation, there are no allegations as to other necessary circumstances of the alleged fraud, including the time and place of the alleged statement, nor are the contents of Offit Kurman's representations as to the Agreement and the Mortgage clear from the complaint. *See id*. Even if Kelly's allegations otherwise complied with Rule 9(b), the claim fails to plausibly allege fraudulent intent. *See id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) ("Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). Kelly asserts only that Offit Kurman made the representations at issue with knowledge of its falsity or with reckless indifference to the truth of the representation. (ECF 1, Compl. ¶ 43). This assertion is a legal conclusion unsupported by any factual allegations in Kelly's complaint. *See Ellis v. Palisades Acquisition XVI LLC*, No. CV JKB-18-03931, 2019 WL 3387779, at *7 (D. Md. July 26, 2019)

(dismissing fraud-based Maryland Consumer Debt Collection Act claim against one defendant where the plaintiff made only conclusory allegations regarding that defendant's knowledge of the invalidity of the plaintiff's debt, but permitting claim against separate defendant whose knowledge could be inferred on the facts pled). Accordingly, Kelly's fraud claims will be dismissed.

### f.   Legal Malpractice & Breach of Fiduciary Duty

Kelly alleges that a number of Offit Kurman's actions constituted legal malpractice, including that Offit Kurman (1) failed to properly understand and apply Florida common law to "Plaintiff's facts and circumstances;" (2) made false statements of material fact or omissions regarding the Agreement and Mortgage; (3) induced Kelly to execute the Agreement and Mortgage; (4) mismanaged Kelly's matters such that Kelly was "forced to incur excessive and unnecessary legal fees and expenses;" (5) failed to file all necessary and appropriate motions and pleadings to protect Kelly's interests; and (6) filed frivolous pleadings in Kelly's matters. (ECF 1, Compl. ¶¶ 62–75). Kelly further alleges "numerous other" unspecified instances where Offit Kurman's conduct "fell below the applicable standard of care." (*Id.* ¶ 73). Offit Kurman argues that the legal malpractice claim lacks any factual allegations to support it and that the allegations are disproven by record evidence.

In Maryland, a former client may state a malpractice action against a lawyer if they can show (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty. *See Thomas v. Bethea*, 351 Md. 513, 528–29 (1998). In order to show proximate causation, the plaintiff must demonstrate that "but for the defendant lawyer's misconduct, the plaintiff would have obtained a more favorable judgment in the previous action." *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 241 (2010) (quoting Restatement (Third) of Law Governing Lawyers § 53 cmt. b (2000)).

Kelly's allegations of malpractice are entirely legal conclusions (e.g., Offit Kurman made "false statements" or failed to "properly understand and apply Florida common law") and are not supported by any factual allegations in the complaint. In many places, the allegations are so vague that it is impossible to determine which of Kelly's many matters she alleges Offit Kurman handled negligently. In addition, allegations concerning proximate causation are entirely lacking. Kelly makes no effort to identify how the outcomes of her various matters would have been more favorable to her had Offit Kurman acted differently. Accordingly, the court will dismiss Kelly's legal malpractice claim.

As for Kelly's claim for breach of fiduciary duty, it is based on essentially the same allegations, and Maryland law requires her to prove essentially the same elements: (1) "the existence of a fiduciary relationship;" (2) "breach of the duty owed by the fiduciary to the beneficiary;" and (3) "harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 599 (2020). For the same reasons as the legal malpractice claim, Kelly's claim for breach of fiduciary duty will be dismissed.

### g.  Intentional Infliction of Emotional Distress

Finally, Kelly alleges that Offit Kurman's discontinuation of the provision of legal services in connection with the cases discussed in the agreement has caused her severe emotional distress, including physical symptoms, and that Offit Kurman's withdrawal from those cases was intentional or reckless as to the emotional distress Offit Kurman knew she would experience.

Under Maryland law, to prevail on a claim for intentional infliction of emotional distress Kelly must establish: (1) the defendant engaged in intentional or reckless conduct; (2) the conduct was extreme or outrageous; (3) the wrongful conduct caused the emotional distress; and (4) the emotional distress was severe. *Batson v. Shiflett*, 325 Md. 684, 733 (1992); *see also Lipenga v.*

35

*Kambalame*, 219 F. Supp. 3d 517, 528 (D. Md. 2016). Claims for intentional infliction of emotional distress are "rarely viable," *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011), and are "to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct," *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). The conduct must exceed "all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater v. Guttman*, 194 Md. App. 431, 448 (2010). To satisfy the fourth element, a party must plausibly allege that he or she "suffered a *severely* disabling emotional response" to the conduct, such that no reasonable person "could be expected to endure it." *Lipenga*, 219 F. Supp. 3d at 528 (internal quotation marks omitted) (emphasis in original).

Kelly states only boilerplate allegations of emotional distress which are insufficient to state a claim for intentional infliction of emotional distress. *See, e.g.*, *McNamee*, 2020 WL 758151, at *10 n.8 (citing *Twombly*, 550 U.S. at 555). The court cannot conclude on the facts alleged that Offit Kurman's exercise of its contractual right to withdraw from legal representation of Kelly plausibly exceeded "all possible bounds of decency" or that it is "to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater*, 194 Md. App. at 448. Accordingly, Kelly's intentional infliction of emotional distress claim will be dismissed.

**CONCLUSION**

For the reasons stated herein, the court will deny the motion for disqualification, (ECF 27), and the motion to intervene, (ECF 52), and will grant the motion to strike the amended complaint, (ECF 35), the motion to strike the suggestion of bankruptcy, (ECF 55), and the motion to dismiss, (ECF 25). A separate Order follows.


  8/23/2021                                            /S/
Date                                                  Catherine C. Blake
                                                   United States District Judge